## J. G. McGRADY v. J. J. TERRELL, COMMISSIONER.

### No. 1385.  Decided February 2, 1905.

#### 1.—Statutory Construction—Laws Passed by Same Legislature.

Two laws passed at the same session of the Legislature are to be construed as though they were one act, and the later held not to repeal the former unless conflict between them is irreconcilable.  (P. 431.)

#### 2.—Same—Sale of Detached School Lands—Actual Settler.

Section 7 of the Act of April 19, 1901 (Session Laws, 27th Leg., p. 292), providing that all detached school lands are to be sold to actual settlers only, is to be construed as applying to surveyed school lands, the sale of which was regulated by that act; and the Act of April 15, 1901 (Session Laws 27th Leg., p. 253), providing for sale of detached sections for cash to others than actual settlers, as relating only to a special class, lands not yet surveyed, hence as not repealed by the Act of April 19th.  (Pp. 430-432.)

#### 3.—School Land—Detached Section.

A detached tract of school land containing less than 640 acres on December 12, 1904, was then subject to purchase by one not an actual settler, under the provision of the Act of April 15, 1901, though at the time such act was passed it contained more than 640 acres, the acreage having been reduced by subsequent sales.  Garrett v. Weaver, 70 Texas, 463, distinguished. (Pp. 432, 433.)

Original application by McGrady for writ of mandamus to the· Commissioner of the General Land Office, requiring acceptance of plaintiff's application for purchase of a detached tract of school land not applied for as an actual settler.

*J. G. McGrady,* for relator.—We believe the reasoning sound as given by the Court of Civil Appeals in its opinion in Thomas v. Wolfe, 16 Texas Civ. App., 25, and that it practically decides this question in our favor.  That is, that the Legislature meant, that if at the time the State authorities were making the sale the tract was unsurveyed, and school land, and detached, and contained less than 640 acres, and was east of the ninety-seventh meridian, it could be sold without actual settlement, for cash.  Bates v. Clark, 95 U. S., 204.  Why attach such sacredness to the size of the tract as it existed when the act was passed, to the exclusion of the size of the tract when it is about to be sold?  We submit there is no reason for this.  An unsurveyed tract of less than 640 acres is usually not desirable for a home, especially if it is too greatly less than that quantity.  But its desirability and value is to day just the same, no matter whether at the time of passage of the Act of 1900 or at passage of the Act of 1901 it then contained more than 640 acres, or then as now was the same in size and less than 640 acres.  It was expensive to the State to have these lands surveyed and sectionized; and where this had not been done and the tract was then or should by future sales be reduced to less

than 640 acres, it was the intention of the Legislature that the Commissioner could sell out the balance to any bona fide purchaser, not a corporation, without settlement, and thus close up .the whole transaction— the applicant being at all expense of having survey made, etc. Such a practice is consistent with the habits of business men, which habits should be attributed to the Legislature in disposing of school lands, as it is a trustee of the school fund and is supposed to use business judgment in handling this fund.

One of the greatest reasons which prompted the Legislature to require the purchaser to become an actual settler was, that it would result in making more advantageous sales of the unsold adjoining land. This reason would no longer exist when the tract had been reduced to 640 acres or less, for then this whole remnant could often be sold to better advantage without requiring settlement. Again, there would not in selling the remnant exist that danger of a single person monopolizing a vast territory or of a syndicate buying a great body of land in names of others. All these requirements about actual settlement have their proper and reasonable application.

*R. V. Davidson,* Attorney-General, and *T. S. Reese,* Assistant Attorney-General, for respondent.—The question is, what character of "tracts or parcels of land" as to size was meant when the act was limited to tracts containing not more than 640 acres. Does it mean such tracts as contained not more than 640 acres at the date of the act, and authorize the sale, without condition of settlement, only of such tracts, or parcels thereof? Or was it intended that when a tract, containing more than 640 acres at that date, was afterwards reduced by sales so that a portion was left unsold containing not more than 640 acres, and was detached, it might be sold without condition of actual settlement?

Suppose, for instance, there was at the date of the passage of the act a large tract of public land containing say several thousand acres, the whole tract detached from other public lands. When, after successive sales, there shall be found in this tract a tract detached from other public lands, was it the intention. that it should be sold without actual settlement? We submit that this is not the intention or meaning of the act. "Containing 640 acres or less," we submit, means now containing that quantity, speaking at the date of the act. The case of Garrett,v. Weaver. 70 Texas, 463, is, we think. directly in point.

The case of Thomas v. Wolfe, 16 Texas Civ. App., 22, is, we submit. not in point, and the decision in that case in no way conflicts with the construction of section 5, Act of 1900, adopted and acted upon by the Commissioner in refusing relator's application.

It is a familiar and well settled rule of construction of statutes that a statute must be construed with reference to the time of the passage thereof, or with reference to its going into effect. That meaning must be given to words which they had at the date of the act, and descriptive

matter therein must refer to things as they existed at the time of its passage. 26 Am. and Eng. Enc. of Law, 2 ed., 611. In Griswold v. Atlantic Dock Co., 21 Barb. (N. Y.), 228, the rule is thus stated: "In matters of description a statute must necessarily refer to things as they exist at time of its passage." Commonwealth v. Erie N. E. Ry. Co., 27 Pa. St., 339. The rule is thus stated in Fischer v. Simon, 95 Texas. 240: "The rule is that a statute speaks as of the time at which it takes effect."

The existence of such tracts and the conditions surrounding them requiring that they should be treated separately, as a class, in regard to the manner of their sale, must be supposed to have been known to and considered by the Legislature. The same can not be said as to such tracts as might thereafter be reduced by sale to a less quantity than contained in the tract at the time of the passage of the act.

A still more cogent argument for the construction, we think, arises upon the language used with regard to the description of such tracts as "detached." In regard to this characteristic or quality of such tracts as were intended to be embraced in section 5, the Legislature is careful to provide that it shall embrace such tracts as "are now or may hereafter become detached from other public lands."

It seems clear that if the Legislature had intended that the requirement as to such tracts, "containing 640 acres or less," had referred to their future status at the time of sale, such intention would have been expressed by the same language as that used in the same sentence with regard to the other descriptive matter.

BROWN, ASSOCIATE JUSTICE.—This is an original suit by J. G. McGrady against J. J. Terrell, Commissioner of the General Land Office, for a writ of mandamus to compel the Commissioner to accept the relator's application to purchase a tract of land belonging to the free school fund of the State of Texas, particularly described in the petition. The relator alleges that on the 23d day of February, 1900, there was a tract of land consisting of 777.65 acres, situated in Fannin County, Texas, which was detached from all other public land and which belonged to the free school fund of the State of Texas. It is alleged that subsequently to that date and prior to the 12th day of December, 1904, the Commissioner of the General Land Office had sold small parcels off the tract which reduced it to 425.4 acres, and, being so reduced, the said tract of land was then detached from all other public lands, containing less than 640 acres, and was subject to purchase without actual settlement. It is also alleged that on the 12th day of December, 1904, the relator presented to the Commissioner of the General Land Office his application to purchase the said tract of land and in all respects complied with the law for the sale of the public free school lands of the State of Texas, except that he was not an actual settler thereon. It is further alleged that the Commissioner of the General Land Office rejected the application solely

upon the ground that the applicant was not an actual settler upon the land, and because the said tract at the passage of the law of 1901, below referred to, contained more than 640 acres in quantity, therefore was not subject to sale under the terms of the fifth section of that act. A more extended statement of the facts is unnecessary to a decision of this case.

By the act entitled "An Act to define the permanent school fund of the State of Texas, to partition the public lands between said fund and the State," etc., approved February 23, 1900 (see General Laws of the Twenty-sixth Legislature, page 29), it was declared that "for the purpose of adjusting and finally settling the controversy between the permanent school fund and the State of Texas, growing out of the division of the public domain, there is hereby set apart and granted to said school fund four million four hundred and forty-four thousand and one hundred and ninety-five acres, or all of the unappropriated public domain remaining in the State of Texas of whatever character, and wheresoever located." Section 3 of that law provided that "all lands set apart and appropriated by this act shall immediately become a part of the permanent school fund, and when surveyed and sectionized, as herein provided, and classified and valued by the Commissioner of the General Land Office, shall be subject to sale in the manner now provided by law for sale of surveyed school lands, except where otherwise provided by this act."

The Twenty-seventh Legislature passed two laws with reference to the free school land of Texas; the first entitled "An Act to amend section 6, chapter 11, Acts of the Twenty-sixth Legislature," etc., approved April 15, 1901. Gen. Laws 27th Leg., p. 253. That act contained the following proviso: "Provided further, that all tracts or parcels of unsurveyed school lands containing 640 acres or less, and which are now or may hereafter become detached from other public lands, shall be sold at not less than $1 per acre, cash, without the conditions of actual settlement, as now provided by the law relating to the sale of other public school lands, or to actual settlers on the same terms and conditions that surveyed lands are sold to actual settlers. This proviso, however, shall not apply to school lands lying west of the 97th meridian of longitude." At the same session of the Legislature there was enacted another statute entitled "An Act relating to the sale and lease of public free school and asylum lands, and to repeal all laws and parts of laws in conflict herewith," approved April 19, 1901, Laws 27th Leg., 292, in which are the following sections:

"Sec. 7. All lands which are now or which may hereafter become detached lands shall be sold to actual settlers only on such terms and conditions as are now or which may hereafter be provided by law."

"Sec. 9. That all laws and parts of laws in conflict with this act are hereby repealed."

Is there a conflict between the proviso of the first act and the seventh

section of the second, and was the proviso repealed by the ninth section quoted? We are of the opinion that the proviso and the seventh section of the second act do not conflict, and that the proviso was not repealed. This language, "All lands which are now or which may hereafter become detached," etc., is very broad and would include the lands designated in the proviso if there were nothing in the context to show a different intention on the part of the Legislature; but when considered in the light of the existing conditions, the provisions can be harmonized. The two laws having been passed at the same session of the Legislature, should be considered as if embraced in one act and should be so construed as that both may stand. Suth. Stat. Const., sec. 283. If considered separately, it would not be presumed that the legislators had undergone such a radical change of mind within four days as to destroy absolutely the provision which had been made for the sale of the lands in the previous act, unless the conflict is irreconcilable. Suth. Stat. Const., sec. 283.

In seeking for the intention of the Legislature it is proper to consider the context of these two acts as if one, and so treating them, we find that in the first act the Legislature was dealing with lands which had not been surveyed, and provisions were made for the selection and survey of those lands in order that one desiring to purchase might be able to present his application, whereas in the second act under consideration, the Legislature was dealing with lands that had been surveyed and sectionized as school lands, which required entirely different regulations from those that were unsurveyed. While it is true that all of the lands belonged to the free school fund of the State, yet it is manifest from the provisions of the two laws that the Legislature treated them as constituting two classes and made different provisions applicable to each class. Considering the two acts as dealing with different classes of school land, section 7 must be construed as applying to the surveyed school lands, and the word "all" must be understood as meaning all of that class. Bivins v. Lessee, etc., 15 Ga., 521; Townley v. State, 3 Harrison N. J. L., 314. The Georgia case is very much in point. The question was as to the construction of a statute which used the word "all" with reference to levies upon property and upon that statute the court said: "True, it says, that in *all* cases where a levy is made, etc. One is amazed, in casting a glance over our statute book, to find how often this form of expression occurs, frequently signifying, as here, not absolutely all—but all, of a particular class, only. Indeed, it seems to be common to all writings,—lay as well as legal, sacred as well as profane. And the generality of the phrase is frequently to be restrained in an act, not only by the context, but by the general form and scheme of the statute, as demonstrative of the intention of the Legislature. Here it means, in *all cases* where the claimant is in possession of the property, he shall not be deprived of it, but it shall be left with him." As in that case, there were different classes of claimants for the property, and the word "all" in its broadest sense would include both classes, so in this case there are two classes of school land and likewise

in its broadest sense the word "all" would include both classes of land,. yet, considering the scope of those laws and the purposes for which they were enacted, it is plain to our minds that the Legislature did not intend by the use of "all" in the seventh section of the second act to include lands which had not been surveyed.

Respondent rejected relator's application to purchase because at the date the law of April 15, 1901, took effect, the tract of land contained more than 640 acres. This ruling rests upon the contention that the terms of the statute as to quantity referred to the situation of the land at the time the Legislature enacted the law, and in support of that position the Attorney-General cites Garrett v. Weaver, 70 Texas, 463. In that case the Supreme Court construed the following language contained in section 1, chapter 52, General Laws, 1879, page 48: "That all the vacant and unappropriated land situated in the following counties * * * be and the same is hereby appropriated and set apart for sale * * . * together with such separate tracts of unappropriated public land situated in organized counties of this State as contain not more than six hundred and forty acres." In delivering the opinion, Judge Stayton said: "That act placed all the vacant and unappropriated land in counties named in it on sale, as did it all the unappropriated land situated within the Pacific reservation, and it also placed on sale separate tracts of unappropriated public lands situated in organized counties, but not all unappropriated lands situated in such counties. Only such separate tracts in such counties as at the time of the passage of the act 'contained not more than six hundred and forty acres, were offered for sale. The size of the separate tracts, in such counties at the time the act was passed, determined whether or not they were placed on sale, and the fact that a tract of greater area than 640 acres may subsequently have been lawfully appropriated to private ownership to such extent as to leave less than that area unappropriated, would not make this residue subject to sale." By that act the Legislature offered the land for sale, and it was correct to hold that the terms of the offer related to the situation of the land at the time the Legislature spoke. At that time none of the unappropriated public lands in the State were subject to sale except that which was offered by that law.

When the proviso under examination became the law, all of the school lands of the State had been offered for sale, and if we strike out the proviso, the land would be still upon the market. The effect of the proviso was not to offer the land for sale, but to prescribe conditions upon which a distinct class of persons might buy it. In connection with the words "containing six hundred and forty acres or less," are the qualifying terms "which are now or may hereafter become detached." This language plainly relates to the condition of the land at the time of purchase, and as the condition of quantity and of being detached must both exist at the time of the application for purchase, the effect of the provision was to prescribe that lands then detached, containing 640 acres or less, or lands

thereafter becoming detached, and containing 640 acres or less, might be sold without the condition of actual settlement; that is, if the land was detached at the time the act was passed and contained no more than the specified quantity, it was subject to sale under that proviso; or if it became subsequently detached, and at the time of the application did not contain more than 640 acres, it might be sold under the same terms. Thomas v. Wolfe, 16 Texas Civ. App., 22. In the case just cited, Judge Williams said: "Sales are required to be made to actual settlers only, except of such lands as are detached and isolated from other public lands which are permitted to be sold to any purchaser but corporations. In mentioning these lands, the statute uses the present tense, but in view of the scope and purpose of the law, and its other provisions, we think it should be held that this language has reference to the situation of the land at the date of the sale." It is not unfrequently the case that the present tense is used in describing past or future events, and it was especially appropriate in this case where the purchase might occur when the two conditions prescribed by the statute of quantity and separation both existed at the time the law was enacted, or it might be that the land sought to be purchased was not at that time either separated from public lands nor existing in a form designating the particular number of acres, but as in this case, by reason of sales made from a larger tract, it would be reduced within the number of acres prescribed and thereby detached from all other public lands. We are of opinion that the tract of land was subject to be purchased by the relator upon the terms proposed in his application, without the requirement of actual settlement thereon.

This construction is supported by the fact that the act, of which the proviso is a part, directed that in the sale of all tracts of land containing 2560 acres or less, it should be surveyed into 640-acre tracts, so far as it was capable of being so divided, whereby there would be in all probability many tracts of less than 640 acres detached from other public land, and under the construction claimed by the respondent none of these could be sold without actual settlement. We believe that such a course would thwart the purpose of the Legislature, which was to convert these small pieces of land in the settled portions of the State into an interest-bearing fund for the support of the public free schools. There are other good reasons which we might assign in support of our conclusion but we think it unnecessary to do so.

After writing the first opinion in this case, our attention was called to the proviso of the Act of April 15, 1901, which we had overlooked. Our first opinion not having been filed, is withdrawn and this is filed in lieu of it.

It is ordered that the writ of mandamus, as prayed for, be issued and that the relator recover of the respondent all cost of this proceeding.

*Mandamus granted.*