SMITH et al. v. TEXAS CO.
No. 1396—6015.

Commission of Appeals of Texas, Section B.
Oct. 26, 1932.

F. L. Henderson and R. V. Armstrong, both of Bryan, and A. S. Rollins, of Dallas, for plaintiffs in error.

E. S. Morris, of San Antonio, and F. T. Baldwin, of Houston, for defendant in error.

LEDDY, J.

The state of Texas, acting by and through its highway department, entered into a written contract with Allen Smith, by the terms of which the latter agreed to construct and improve, at his own cost and expense, certain portions of state highway No. 24 in Young county, Tex.

A portion of the work covered by this contract was afterwards sublet by Smith to Paul Schriewer. The latter purchased from the defendant in error certain road materials necessary to carry out the aforesaid contract. This material was used in constructing the improvements for which the contractor was bound. Payment therefor was not made, and on August 1, 1929 before final settlement by the state with Allen Smith, in compliance with the provisions of Senate Bill 123, chapter 17, Acts 39th Legislature, articles 5472a and 5472b, Vernon's Annotated Texas Civil Statutes, defendant in error filed with the state highway department written notice of its claim against said Paul Schriewer and Allen Smith in an effort to fix a lien on the money, due the contractor under said contract.

After the filing of this claim, the contractor, Allen Smith, in order to obtain payment from the state highway department of the balance due him under the terms of said contract, filed a bond executed by himself as principal, with the American Surety Company of New York as surety, in the sum of $46,849.16. This bond was executed for the benefit of the Texas Company and other claimants; its conditions being in conformity with the provisions of Senate Bill 153, chapter 78, 41st Legislature, Second Called Session (1929), which is now carried as article 5472b—1, Vernon's Annotated Texas Statutes. Upon the filing of this release bond, the state highway commission duly executed and delivered its voucher to Allen Smith, contractor, for $23,414.58, the amount remaining due and unpaid under said contract.

Defendant in error filed this suit against the original contractor, Allen Smith, the subcontractor, Paul Schriewer, and the American Surety Company, surety, in which it sought to recover against said parties for the amount due it for material furnished to the subcontractor, Paul Schriewer, together with reasonable attorney's fees for the prosecution of the suit.

The case was tried before the court without the intervention of a jury. Judgment was rendered in favor of defendant in error, Texas Company, for the full amount of the claim against Paul Schriewer, the subcontractor, but it was denied a recovery against Allen Smith, principal, and the American Surety Company, surety, on the release bond.

Upon appeal, the Court of Civil Appeals reversed the judgment of the trial court and rendered judgment for the full amount claimed in favor of defendant in error against the principal and surety upon the bond aforesaid, and also awarded it the sum of $500 as reasonable attorney's fees.

Plaintiffs in error, Allen Smith and the American Surety Company challenge the correctness of the judgment of the Court of Civil Appeals awarding this recovery against them upon the following grounds:

(1) That article 5472b, R. S. 1925, is in derogation of sovereignty and in effect a garnishment statute and therefore should be strictly construed; that, when so construed, the lien therein provided does not inure to the benefit of one furnishing material to a subcontractor.

(2) That, even if said statute, properly construed, creates a lien in favor of one furnishing material to a subcontractor, the defendant in error failed to establish such lien, because it did not file its claim before any payment had been made to the contractor; that no lien was fixed for the further reason that defendant in error failed to allege or prove, as required by the terms of said article, that its claim was filed with the official of the state whose duty it was to pay the amount due the contractor.

(3) That the Court of Civil Appeals was without authority to allow defendant in error $500 as attorney's fees, because there was no evidence presented upon such issue in the trial court, nor was there any finding by such court as to what would constitute a reasonable attorney's fee.

Plaintiffs in error's contention that articles 5472a and 5472b should be strictly interpreted, because such legislation is, in effect, a garnishment statute and in derogation of sovereignty, is fully and completely answered by the provisions of article 10 of the Revised Statutes of 1925. This article prescribes the rule by which the courts of this state shall construe all of the revised statutes. It reads as follows: "The rule of the common law that statutes in derogation thereof shall be strictly construed shall have no application to the Revised Statutes; but the said statutes shall

constitute the law of this State respecting the subjects to which they relate; and the provisions thereof shall be liberally construed with a view to effect their objects and to promote justice."

This statute is plain and emphatic in its terms. Its meaning is too clear to admit of any question. It furnishes the rule and guide by which the courts of this state, in interpreting any of the revised statutes, must arrive at the meaning and intention of the Legislature. In establishing this rule, the lawmaking body made no exception as to statutes in derogation of sovereignty or those which provide for summary remedies. The courts have no authority to ingraft any exceptions upon this statute, but must comply with its plain direction that all of the statutes composing the Code shall be given a liberal interpretation with a view to effect their objects and to promote justice.

■ Plaintiffs in error quote from a number of decisions of the Supreme Court in which expressions have been used to the effect that statutes providing summary remedies, such as attachments, garnishments, etc., should be strictly construed. An examination of the cases cited discloses that they do not decide that statutes of this nature should be strictly interpreted when the court is endeavoring to arrive at the legislative purpose and intent in their enactment. The real holding in all of these cases is that those desiring to avail themselves of the benefits of such statutes should be required to comply strictly with their provisions.

A review of the cases relied on will show that the character of compliance with statutes of this nature, by those seeking benefits thereunder, was what the court had before it when stating that such statutes should be strictly construed. In Scurlock et al. v. Gulf, C. & S. F. Ry. Co., 77 Tex. 478, 14 S. W. 148, the language of the court that a statute providing for garnishment should be strictly construed is coupled with the statement: "That a party attempting to avail himself of the remedy must strictly follow the law."

In Gause v. Cone, 73 Tex. 239, 11 S. W. 162, 163, the proposition announced by the court, that the law must be strictly construed, is likewise coupled with the declaration "that the extent of the garnishee's liability is measured and limited by the express provisions of statutory law."

In Buerger v. Wells, 110 Tex. 566, 222 S. W. 151, it is made plain by Chief Justice Phillips that garnishment statutes should be strictly followed. He says: "Garnishment is but a species of attachment. It is a summary proceeding. The statutes governing it should be followed with strictness."

In Willis v. Lyman, 22 Tex. 268, the court, after reciting the inconvenience and hardships of a statute providing for a summary proceeding, said: "For these reasons, proceedings against garnishees ought not to be sustained, unless they are in strict conformity with the requirements of the law."

It is thus seen that the records in the cases relied on by plaintiffs in error did not present a situation where the court was endeavoring to ascertain the meaning and intent of a statute providing for a summary remedy. The real question involved was whether the party seeking the benefit of such remedy had strictly complied with the provisions of the law in regard thereto.

We think the true rule is that the courts of this state, when seeking to arrive at the legislative intention, must interpret any statute liberally, with a view to effect the object and purpose of its enactment. This they are directed to do by the express command of the statute. When a statute providing for a summary remedy has been so interpreted and its meaning determined, then it is the duty of the court in applying the statute to require those seeking to avail themselves of its benefits to comply strictly with its terms. There is a marked distinction between construing a statute strictly when endeavoring to ascertain its meaning and in requiring persons seeking to avail themselves of its benefits to comply strictly with its provisions.

■ It is therefore out duty to give the statute here involved a liberal interpretation in order to effect the object and purpose of its enactment. When so interpreted, we think there is manifested a design upon the part of the Legislature to extend the benefit of the lien provided for to those furnishing material to subcontractors. This purpose is revealed in the caption of the act. It is sufficiently comprehensive to include subcontractors. It is recited that it is "An Act to create a lien in favor of any person, firm or corporation who may furnish any material * * * to contractors who contract for public improvements."

It will be noted that the language of the act does not limit the lien to those furnishing material to contractors who contract with the state for public improvements. The provision is that the lien arises in favor of any person furnishing material to "any contractor for any public improvements." The material furnished by defendant in error to Schriewer was furnished to a "contractor for a public improvement" and therefore clearly within the purview of the statute.

■ It is a familiar rule of statutory interpretation that, where a word used in a statute has been given a certain meaning by the courts, and the legislature subsequently uses the same word, without specially defining it, in an act relating to the same subject-matter, it will be presumed that it was deliberately used by the lawmaking body in the light of

the judicial construction it has theretofore received. Cooper v. Yoakum, 91 Tex. 391, 43 S. W. 871; Scott v. State (Tex. Cr. App.) 110 S. W. 69; 36 Cyc. p. 1154.

Prior to the time the Legislature enacted the statute under consideration, our Supreme Court, in Bassett v. Mills, 89 Tex. 162, 34 S. W. 93, construed what is now article 5452, Revised Statutes, which gives a lien to those furnishing labor and material to a contractor in the construction of any private improvement. It was there held that a lien arose in favor of one furnishing material to subcontractors, although only contractors were named therein. With this judicial definition of the term "contractors," in a statute similar to the one under consideration, it must be presumed that, if the Legislature did not intend to grant a lien to those furnishing material to subcontractors to be used in a public improvement, it would not have used a term which had theretofore been construed by the courts to include them.

There are a number of decisions which hold that the word "contractor," when used in statutes similar to the one under consideration, includes a subcontractor. Fennell v. Trinity Portland Cement Co. (Tex. Civ. App.) 209 S. W. 796 (writ refused); Huttig Sash & Door Co. v. Stitt (C. C. A.) 218 F. 1, 4; United States Fidelity & Guaranty Co. v. Henderson County (Tex. Civ. App.) 253 S. W. 835; Mankin v. U. S., 215 U. S. 533, 30 S. Ct. 174, 54 L. Ed. 315; Mundt v. Sheboygan, etc., R. Co., 31 Wis. 451; 13 C. J. 212.

Again, when we consider legislation covering the same subject-matter passed at the same session of the Legislature which enacted the statute under consideration, it becomes apparent that articles 5472a and 5472b were designed to secure payment to all persons furnishing labor, material, and equipment used in the construction of any public improvement. Senate Bill 74, Acts 39th Leg. (1925) c. 186, p. 456 (Vernon's Ann. Civ. St. arts. 6674a–6674n), was enacted by the same Legislature which passed the act under consideration. It provides that the state shall retain 10 per cent. of the contract price for any such improvement until the entire work has been completed and accepted, and it expressly forbids final payment of the retained sum until it is shown that "all sums of money due for any labor, materials, or equipment furnished for the purpose of such improvements made under any such contract have been paid." Section 13 of the act (Vernon's Ann. Civ. St. art. 6674m). It is proper to construe this act as a part of the legislation providing for the lien in question, as it relates to the same subject-matter and was passed at the same session of the Legislature. Southern Pac. Co. v. Sorey, 104 Tex. 476, 140 S. W. 334; McGrady v. Terrell, 98 Tex. 427, 84 S. W. 641; Lovett v. Simmons (Tex. Com. App.) 29 S.W.(2d) 1021; 36 Cyc. p. 1147.

We think it fairly appears from a consideration of the general scheme of legislation upon this subject that it was the intention of the Legislature to enable those furnishing labor, material, and equipment to a subcontractor for any public improvement to receive payment therefor to the extent of any unpaid balance due said subcontractor at the time notice required by statute is given. Brooks Construction Co. v. First State Bank of Marquez (Tex. Civ. App.) 39 S.W.(2d) 83; Allen Smith v. Jacksboro Stone Products Co. (Tex. Civ. App.) 41 S.W.(2d) 347; Pierce Petroleum Co. v. Smith et al. (Tex. Civ. App.) 42 S.W.(2d) 88.

This brings us to the question whether defendant in error sufficiently complied with the terms of the statute to establish a lien upon the funds due the contractor. Plaintiff in error asserts that there was a failure to do so in two respects: (a) Because said claim was not filed before any payment had been made to the contractor, Allen Smith. (b) Because it was not alleged or proven that such claim was filed with the official of the state whose duty it was to pay for work performed under said contract.

The statute provides that persons furnishing labor, material, or equipment to any contractor for any public improvement shall have a lien on the money, bonds, or warrants due or to become due to such contractor, provided they shall, before any payment is made to the contractor, notify in writing the official of the state, county, town, or municipality, whose duty it is to pay such contractor for his claim.

It is undisputed that a large portion of the amount due under the contract had been paid to Allen Smith, the contractor, before defendant in error filed notice of its claim with the state highway commission. If a proper construction of the statute is that a lien cannot be fixed by any one furnishing labor, material, or equipment for a public improvement, unless the notice is filed before any money has been paid to the contractor, then it follows that defendant in error's notice was insufficient to fix a lien on the money then due the contractor.

To decide that a lien cannot be fixed upon the funds due the contractor unless notice is filed with the proper official before any money has been paid out under the contract would operate to defeat the primary object and purpose of the passage of this legislation. We have already determined that this statute was enacted with the view of enabling those furnishing labor, material, and equipment for any public improvement to secure payment therefor. If we should adopt the construction of the statute contended for by plaintiffs

---

778

in error, it would place it within the power of the contractor, the person against whose funds the Legislature provided for fixing the lien, to defeat the establishing of such lien whenever he desired to do so. Any contractor who secured a contract for the construction of a public improvement involving a large sum could purchase an insignificant amount of material and receive payment for same before making any other contract for necessary labor, material, or equipment to complete the performance of his contract. His action in this respect would absolutely prevent the fixing of any lien upon any funds to become due him by any one subsequently furnishing material, labor, or equipment for the construction of the entire improvement. Under such circumstances it would be impossible for the required notice to be given. This statute should not be given such a construction as will render it impossible of performance, nor should it be so interpreted as to place it within the power of those against whom it is designed to operate to defeat its purpose, unless the language thereof does not admit of any other fair or reasonable interpretation. American Ind. Co. v. City of Austin, 112 Tex. 239, 246 S. W. 1019; Davis v. Estes (Tex. Com. App.) 44 S.W.(2d) 952, 953; Imperial Irr. Co. v. Jayne, 104 Tex. 395, 138 S. W. 575, Ann. Cas. 1914B, 322.

The provision of the statute requiring notice to be filed before "any payment" has been made to the contractor was evidently intended to mean that the notice must be given before any payment of the funds upon which the lien is sought to be impressed has been made to the contractor. In other words, it was for the purpose of making plain that the giving of the notice would not operate to create a lien upon any funds which had theretofore been paid to the contractor.

We also conclude that the filing of the notice with the state highway commission was a strict compliance with the provision of the act, which requires the same to be filed with the official, whose duty it is to pay the original contractor. Winder Bros. v. Sterling, 118 Tex. 268, 12 S.W.(2d) 127, 14 S.W.(2d) 802; Metropolitan Casualty Ins. Co. v. Cheaney et al. (Tex. Civ. App.) 32 S.W.(2d) 691; West Chicago Park Com'rs v. Western Granite Co., 200 Ill. 527, 66 N. E. 37; James P. Hall, Inc., v. Jersey City, 62 N. J. Eq. 489, 50 A. 603.

Funds contributed by the federal government are authorized to be expended by and under the supervision of the state highway department. Article 6672.

Article 6674 provides that: "All money herein authorized to be appropriated for the operation of the Department and the purchase of equipment shall be paid from the State Highway Fund, and the remainder of said fund shall be expended by the Commission for the furtherance of public road construction and the establishment of a system of State highways as herein provided."

All money deposited to the credit of the highway fund is by the terms of article 6674e made subject to appropriation for the specific purpose of said improvement of said system of state highways by the highway department.

It thus appears that the Legislature has established a department and clothed it with full and complete authority to make contracts for the improvement of state highways and created a special fund out of which the obligations made by such department shall be discharged. The highway commission is charged with the duty of paying these obligations from this special fund. When consideration is given to the statutes vesting control over designated state highways in the state highway commission, and authorizing such body to contract and expend funds set apart for that purpose, it becomes obvious that such department is the one whose duty it is to pay contractors for work performed upon state highways. It is true that the state treasurer actually pays out the money on deposit to the credit of the highway department, as is generally the case with all obligations made by a state department for and on behalf of the state. He does this, however, as a mere disbursing officer and on vouchers issued and approved by a majority of the highway commission. He has no discretion in paying claims of contractors when they are properly approved by the highway commission. Certainly such discretion was intended to be lodged with the official whose duty it is to pay off and discharge such obligations. The Legislature might have made provision for the special highway fund to be deposited in some private banking institution. If it had done so, such bank would actually pay the vouchers issued by the highway department, but under such circumstances it could in no proper sense be considered the official whose duty it was to pay contractors for services performed under their contracts.

Further, we think it reasonable to assume that the Legislature contemplated that the required notice should be filed with the particular department whose records at all times disclosed the amount remaining unpaid to the contractor. This fact would not appear from the records of the state treasurer, as the contracts for such improvements are not required to be filed with that official, and he would have no means of ascertaining the amount remaining unpaid to a contractor except through an examination of the records of another department.

We sustain plaintiffs in error's contention that the Court of Civil Appeals was without authority to fix and award defend-

ant in error what it considered a reasonable attorney's fee. When the recovery of such a fee is sought under a statute providing therefor, there is necessarily presented an issue of fact. Wichita Valley Ry. Co. v. Wood (Tex. Civ. App.) 284 S. W. 301; St. Louis Southwestern Railway Co. v. Claybon (Tex. Civ. App.) 199 S. W. 488; Quanah, A. & P. R. Co. v. Price (Tex. Civ. App.) 192 S. W. 805. The Court of Civil Appeals is without authority to determine a material issue of fact and render judgment thereon when such issue has not been passed upon by the trial court. The appellate court is limited, in its review of a case on appeal, to a determination of questions affecting the correctness of the judgment rendered by the court below.

It is true it has been held that a trial judge may determine an issue of fact as to what constitutes a reasonable attorney fee for services rendered in a trial before him, from his own knowledge of the nature and value of the services for which compensation is claimed. Johnson v. Blanks, 68 Tex. 495, 4 S. W. 557. But it is not within the province of a Court of Civil Appeals to try a disputed issue of fact. It can only use its own knowledge as to what constitutes a reasonable attorney's fee for services shown by the record before it for the purpose of reviewing the correctness of the judgment of the trial court, the tribunal which is vested with the exclusive power of deciding such issue.

The case of Southland Life Insurance Co. v. Norton, 5 S.W.(2d) 767, decided by Section A of the Commission of Appeals, is not authority to support defendant in error's contention that the Court of Civil Appeals is authorized to fix and award an attorney's fee where the issue as to what would constitute a reasonable one under all the facts has not been adjudicated by the trial court. It was merely held in that case that the Court of Civil Appeals might use its own knowledge as to the reasonableness of an attorney's fee, in connection with the facts proven upon the trial, in reaching a conclusion as to whether the fee awarded by the trial court was so excessive in amount as to require a remittitur to be entered. The holding did not go to the extent of authorizing the Court of Civil Appeals to usurp the functions of a trial court and award an attorney's fee where no judgment therefor has been rendered by the latter court. The determination as to whether an attorney's fee awarded by a trial court is excessive in amount is, of course, a proper exercise of the appellate jurisdiction of the Court of Civil Appeals. But the fixing by it of an attorney's fee, when such issue has not been determined by the trial court, would constitute the exercise of an original rather than an appellate jurisdiction.

We recommend that that portion of the Court of Civil Appeals' judgment awarding defendant in error $500 attorney's fees be reversed and remanded to the district court in order that a reasonable attorney's fee may be fixed by that court. The remaining portion of the judgment of the Court of Civil Appeals should be affirmed.

CURETON, C. J.

The judgment of the Court of Civil Appeals is in part affirmed and in part reversed, and cause remanded, as recommended by the Commission of Appeals.

We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.