**THURBER CONST. CO. et al. v. KEMPLIN et al.**

**No. 8060.**

Court of Civil Appeals of Texas. Austin.

Jan. 23, 1935.

Rehearing Denied March 27, 1935.

John Hancock, Clarence Wightman, and Eugene T. Adair, all of Fort Worth, for appellant Thurber Const. Co.

W. B. Handley and C. J. Shaeffer, both of Dallas, for appellant F. C. Crane Co.

Cofer & Cofer, of Austin, and Murphy & Murphy, of Gainesville, for appellees.

BAUGH, Justice.

This suit involves the proper distribution of funds retained by the state highway commission under a contract dated April 23, 1931, by it with D. H. Purvis & Son, for the construction of state highway No. 5, from Gainesville, Tex., to the Grayson county line. Purvis & Son subcontracted the construction of said project to Abe Anderson & Son, who in turn subcontracted same to L. G. Owen and D. H. Seigler. In October, 1931, after the work contracted for had been about 75 per cent. completed, these parties became unable to continue said work, and Purvis & Son forfeited said subcontracts except as to D. H. Seigler, who had not defaulted; and on November 25, 1931, entered into the following contract with appellant, Thurber Construction Company:

"State of Texas, County of Tarrant.

"Know All Men by These Presents:

"That, we D. H. Purvis & Son, of Fort Worth, Texas, herein called First Party, and Thurber Construction Company, a corporation, also of Fort Worth, Texas, herein called Second Party, have this day entered into the following contract and agreement, to-wit:

"1. First Party, as general contractor under the State of Texas, agrees to sublet to Second Party, as subcontractor, all unfinished work, except as noted below in paragraph No. 2, on Job S. P. No. 477–D and Job F. A. P. No. 539–D, in Cook County, Texas, as represented by original contracts from the State Highway Department of the State of Texas to D. H. Purvis & Son, dated the 23rd of April, A. D. 1931, to which original contracts reference is hereby made and the same are adopted as representing the conditions, terms and specifications between the parties hereto for the completion of the unfinished work by Second Party, except as to the time limit contained therein.

"2. Second Party agrees to complete all unfinished work and furnish all labor and material incident thereto, except, that portion of the said work heretofore sublet by Abe Anderson & Sons to Dave Seigler, and which portion of said work the said Seigler is now actually in process of completion. Said Seigler is not to be disturbed in his subcontract by the Second Party, but is to be permitted to complete the same in accordance with his subcontract under the said Abe Anderson & Sons.

"3. The said Second Party agrees to commence the work hereunder on or before the 30th day of November, A. D., 1931, and complete the same in accordance with the specifications therefor within sixty (60) working days.

"4. The Second Party shall receive as its compensation for the work done and material furnished hereunder in the completion of the said work, the same prices which the said contracts between the State Highway Department and the said Purvis specifies to be paid to the said Purvis by the said Highway Department, provided, however, that should said Second Party's cost exceed the final amount to be received under State Highway Department's final estimate, then said First Party shall pay to the Second Party such amount as will reimburse it for its actual costs, such excess not to exceed fifteen per cent (15%) of total amount earned as shown by final estimate of State Highway Department. Payment is to be made to Second Party within sixty (60) days after the completion and acceptance by State Highway Department of said work.

"5. The said First Party guarantees the payment of amounts payable to said Second Party hereunder and agrees to indemnify said Second Party for any claims filed covering labor, material, equipment purchases and rentals, and for any damage or anticipated profits on the part of any prior contractor or his subcontractor on said work, and against loss from delay due to any court proceedings instituted by or against First Party in reference to former sub-contracts on said work, and will furnish Second Party a good and solvent surety company bond guaranteeing the performance of this contract by First Party.

"Witness our hands, at Fort Worth, Texas, this the 25th day of November, A. D. 1931."

Thurber Construction Company fully performed its contract at its own expense, and the completed highway was accepted by the highway commission on August 2, 1932. Numerous claims were filed with the highway commission by those furnishing labor, materials, etc., to subcontractors Anderson & Son, and to L. G. Owen, for which they had not been paid, and by D. H. Seigler, who had fully performed his subcontract. All of these claims, except perhaps a part of that of Seigler, had accrued to the claimants prior to the date of said contract made with appellant to complete the unfinished portion of said project, and represented labor and materials furnished to the subcontractors who had defaulted prior to November 25, 1931.

This suit was by said claimants either as plaintiffs or as interveners, some 77 in number, against Purvis & Son, Abe Anderson & Son, L. G. Owen, and the highway commission, to establish their claims, and have same declared a lien upon and paid out of the funds retained by the highway commission under its contract with Purvis & Son, and under the provisions of articles 5472a and 6674m, Vernon's Ann. Civ. St. The highway commissioner answered that it had funds retained by it in the sum of $15,016.53, which it tendered into the registry of the court to be paid out as the court should determine.

Appellant intervened, set up its contract of November 25, 1931, above quoted, alleged its complete performance thereof at an expense to it for labor, materials, etc., of $15,003.63, none of which amount had been paid to it by Purvis & Son; that its claim was for labor, materials, etc., furnished by it as subcontractor in the performance of its contract with Purvis & Son; and sought to have its claim adjudged to be prior to those of the other claimants and to be paid first out of the funds retained by the highway commission.

The case was tried to the court without a jury. Judgment was rendered establishing the claims of appellees in the aggregate sum of more than $17,000, denying to appellant any portion of the funds paid by the highway commission into the registry of the court, reducing F. C. Crane Company's claim from $1,846.25 to $586.25, allowing $2,000 as attorneys' fees to the attorneys for appellees to be taxed as costs, and ordering the remainder of said fund prorated amongst said claimants.' From this judgment the Thurber Construction Company and F. C. Crane Company have appealed. Further facts will be stated in the discussion of the issues raised.

In findings of fact and conclusions of law the trial court found and concluded that under the contract above set forth Thurber Construction Company took over the original contract between Purvis & Son and the highway commission, agreed to complete said highway for the remainder of the original price due Purvis & Son thereunder, "became assignees of the said D. H. Purvis & Son and stand in the shoes of the original contractor * * * and that the said Thurber Construction Company, so standing in the position of the original contractor and as its assignee, is not entitled to share in said moneys with those who furnished labor and material." The court also concluded that under said contract with appellant "the claim of the latter to the moneys in the hands of the State Highway Commission was expressly made subject to the claims of those furnishing labor and material."

■ The first contention of appellant is that the court erred in concluding that said contract constituted an assignment by the original contractors of their contract with the highway commission. This contention, we think, must be sustained. The trial court's judgment denying to said appellant any right to participate in said fund was obviously based upon that conclusion, and not upon the insufficiency of its pleading of said account nor the insufficiency of its proof of same. It is not contended that the highway commission dealt with or considered Thurber Construction Company as assignee of said Purvis & Son contract, nor that any of the parties thereto so considered it. On the contrary, the evidence shows that the highway commission continued to deal with the original contractor until the final completion and acceptance of said project. The contract with Thurber Construction Company relates only to a portion of Purvis & Son's undertaking. The provision for compensation was obviously for the purpose of fixing the rate and amount of

said compensation, and the contract did not alter the primary obligation of Purvis & Son and their surety to complete their contract with the state. Clearly, we think, Thurber Construction Company was not an assignee of Purvis & Son, but merely a subcontractor under them and nothing more. Republic Supply Co. v. Allen (Tex. Civ. App.) 262 S. W. 113; 60 C. J. 669; 2 Bouvier's Law Dictionary (3d Rev.) 3163; 4 Words & Phrases, Second Series, p. 725. That Purvis & Son were primarily obligated to pay Thurber Construction Company its compensation for the performance of its contract is clear. And, even if they had bound themselves to pay same out of the funds due or to become due them from the state, that would not constitute an assignment of such fund. Koenig v. Rio Bravo Oil Co. (Tex. Com. App.) 24 S.W.(2d) 14; 5 Tex. Jur. 25, and cases there cited. The subcontractor was required to perform its contract with Purvis & Son in keeping with the terms of their contract with the state in any event, and the mere stipulation in its contract with Purvis & Son to that effect does not change its status from that of a subcontractor to that of an assignee.

■ It is now settled that a subcontractor, by giving proper notice to the highway department of his claim, can fix a lien on the funds in its hands due the original contractor for labor and materials furnished by such subcontractor. Texas Co. v. Schriewer (Tex. Civ. App.) 38 S.W.(2d) 141; Smith v. Texas Co. (Tex. Com. App.) 53 S.W.(2d) 774; Southern Surety Co. v. First State Bank (Tex. Civ. App.) 54 S.W.(2d) 888 (writ ref.). That being true, Thurber Construction Company's claim, under its contract with Purvis & Son, in so far as it covered labor, materials, etc., protected by the statute and which were used on said project, came within the purview of article 5472a, Vernon's Ann. Civ. St., and the grounds on which the trial court denied it participation in the funds in question were erroneous. And it is obvious, we think, that the trial court's judgment was based upon the conclusion that Thurber Construction Company was not entitled to participate in said fund in any event, and not upon the insufficiency of the pleadings or the proof of its claim.

■ Appellees insist, however, that said account of Thurber Construction Company was insufficiently pleaded, that their exceptions to such pleadings that said account was not properly itemized should have been sustained, and cross-assign error of the trial court in overruling said exceptions. This exception was raised by supplemental petition of appellees. Appellant's counsel, however, offered upon the trial, in the event the court decided that the pleadings in this respect were not sufficient, to amend such pleadings. Even if such pleadings, which the trial court by overruling exceptions thereto held to be sufficient against such exceptions, were not in law sufficient, in view of the offer of appellant to amend same, it is obvious that appellees' counter propositions cannot be sustained. It is pertinent to here observe, however, without undertaking to set out the items of said claim pleaded by appellant Thurber Construction Company, in detail, that we think such items should have been more specifically detailed.

■■ Appellees also urgently insist that there is no proof in the record of Thurber Construction Company's claim, that none was admitted by the trial court except for purposes of a bill of exception, and therefore that the trial court's judgment should be sustained because said appellant failed to make proof of its claim. The original bills, receipts, accounts, etc., paid by Thurber Construction Company, upon which the proof was tendered, have been sent up with the record. They are numerous and varied, and were, we think sufficient bases for the proof tendered. They are too numerous and intricate to undertake to discuss here. When proof of said account was offered, appellees' counsel objected to the admission of same on several grounds, particularly because the rights of the parties were fixed by the contract of November 25, 1931, and all of the items of such account were therefore immaterial; and, second, because there was no pleading on which to base the testimony. We quote from the record what then transpired:

"The Court: Senator Cofer raised a serious question on the pleading of that account. I presume if objection was sustained you would want to perfect your bill by including the testimony?

"Mr. Hancock: Certainly. This is the first time he raised that question about the insufficiency of the pleading.

"The Court: I think I will sustain the objection and permit you to complete your bill. Of course, we can change our ruling if necessary because I am going to hear some argument later on. You can complete your bill and then consider the testimony.

"Mr. Cofer: For the present you sustain the objection?

"The Court: Yes, sir, because I don't know what this will lead to."

Thereupon the witness testified at some length about detailed items going to make

up the items listed in the aggregate in the account pleaded, which account set forth only totals of such items as labor, gas and oil, dynamite, freight, repairs on equipment, feed, etc. At the conclusion of this testimony, the following transpired, as shown by the record:

"Mr. Hancock: In that connection, it is understood that we are offering all of these statements. I am offering them for all purposes, for the bill, and if it is necessary to amend my petition, I will do so. It is offered for all purposes. You put the record in that shape by not presenting the exceptions to start with. I don't know what to do until the Court rules on it.

"(The statements referred to above are by agreement of counsel made a part of this record for all purposes, and the originals of same are being sent up under separate cover in accordance with said agreement, as a part of this record.)"

Even if it be conceded that the testimony was excluded except for purposes of the bill of exception, which is not clear, we think it is clear that the court excluded it on the sole ground that the account was not sufficiently pleaded, and that after appellees' exception to the pleading on that ground had been overruled; and notwithstanding appellant's offer to amend its pleadings in that respect if necessary.

Under such circumstances, we think appellant is entitled to have the proof offered and brought up with the record considered on the issues raised. We do not hold that all of the items claimed by appellant were such as to constitute a lien upon the fund in question. Nor shall we undertake to differentiate the particular items here. Suffice it to say that only those items for labor, materials, etc., contemplated in article 5472a, as were reasonably necessary and proper, and furnished at just and reasonable prices, in the performance of the contract in question, constitute a proper charge against such fund. See Employers' Cas. Co. v. Rockwall County, 120 Tex. 441, 35 S.W.(2d) 690, 38 S.W.(2d) 1098.

■ There is necessarily involved the question as to what extent the various claimants may participate in the funds in question. The original or general contractors did not undertake to perform their contract themselves. It was performed only through subletting. The original contract between Purvis & Son with the highway commission provided for payment of the aggregate sum of $47,656.69. As above stated, Purvis & Son subcontracted the project to Abe Anderson & Son, who sublet same to L. G. Owen and D. H. Seigler. The highway commission dealt only with Purvis & Son and paid to them the amounts earned as the work progressed, upon estimates made by the engineer in charge. On November 18, 1931, when the work was estimated to be 75 per cent. completed, Anderson & Son and L. G. Owen forfeited their contract, and thereafter did no further work on the project. Up to that time the highway commission had paid to Purvis & Son under said contract the sum of $31,814.46. The amount earned up to that time under said original contract, according to the engineers' estimates, was $37,105. The highway commission had retained, however, under the statute (article 6674m, Vernon's Ann. Civ. St.), 10 per cent. of the amount earned, aggregating $3,710.52, and, in addition, had also retained $1,580.21 for claims of laborers and materialmen filed with it up to that time. The claims involved in this suit, other than those of Seigler, who had not defaulted on his subcontract, and who completed same, and of L. D. Parks and Thurber Construction Company, appear to have been debts incurred by Anderson & Son and by Owen, prior to the time (November 18, 1931) that they abandoned their subcontracts. Nor does the record show how much of the funds paid to Purvis & Son by the state was by them paid to their subcontractors, nor how much, if anything, was then due or thereafter to become due to said subcontractors for work done by them up to the time they abandoned their subcontracts.

Under such circumstances, are the creditors, i. e., the laborers and materialmen, of the subcontractors who have defaulted, abandoned the work, and thereafter are due nothing towards the completion of said project, entitled to share in the remaining unearned funds in the hands of the highway commission, and to which the original contractor must look to compensate him for the completion of such project, which under his contract with the state he was obligated to do? Clearly they are not. This question was settled by the Supreme Court in Smith v. Texas Co., 53 S.W.(2d) 774, 777. After holding that creditors of a subcontractor came within the purview of the statutes, the court said: "It was the intention of the Legislature to enable those furnishing labor, material, and equipment to a subcontractor for any public improvement to receive payment therefor *to the extent of any unpaid balance due said subcontractor at the time notice required by statute is given.*" (Italics ours.) Where a subcontractor, through no

fault of the original contractor, abandons his subcontract, owing for labor and material accounts far in excess of what he has earned under his subcontract, as here, if such creditors could subject to the payment of their claims the unearned funds of the general contractor, which were not due nor to become due such defaulting subcontractor. it is obvious that the general contractor, who had nothing to do with incurring such excessive claims, would have nothing left from which to complete the project which his subcontractor had abandoned. The creditors of a subcontractor can have no greater claim against the funds due the general contractor than the subcontractor himself would have, had he paid for all his labor and material and presented his claim therefor to the general contractor or to the highway commission. It is obvious, in that case, that he would be due no more than he had earned under his contract, even though he had paid out far more for such labor and material than the price he contracted to do the work for.

The creditors of Owen and Anderson & Son were entitled to assert a lien on said funds only to the extent of that portion of same that was due to said subcontractors at the time they gave notice of their respective claims. The remainder of such fund after such deduction should be allocated to the creditors of Purvis & Son in accordance with the provisions of the statute.

Appellant next contends that the court erred in taxing as costs, to be paid out of the funds in question, attorneys' fees in the sum of $2,000. The trial court's conclusions of law filed herein on this issue were: "I conclude as a matter of law that this is a class suit in the nature of a creditors' or lienholders' bill brought by plaintiffs for the benefit of themselves and all others similarly situated, and that under the rules of equity plaintiffs should have allowed in favor of their attorneys * * * the reasonable attorney's fees of $2,000 to be taxed as costs and paid out of the funds as other costs."

■■ The scope and purpose of a creditor's bill is ordinarily to bring into exercise the equitable powers of the court wherein an adequate remedy at law cannot be had. "These bills originated in the ineffectiveness of legal execution, and were designed to aid creditors, who, having exhausted their legal remedy, still remain with their debts unsatisfied, in reaching property of their debtors not reachable by ordinary process." 8 R. C. L. 3; 12 Tex. Jur. 183. The general rule is that

"money paid into court cannot be reached by a creditor's bill, although the debtor has an interest therein and it is paid into court for his benefit." 15 C. J. 1404. While attorneys' fees may be allowed the plaintiff in a general creditor's bill, to be taxed as a part of the costs, to the extent same are beneficial to other creditors, this rule seems to be predicated upon the conception that through the efforts of such plaintiffs assets or funds have been added to the estate of the debtor, or to the trust fund involved, which but for such efforts or services would have been impaired or lost to the creditors; that is, that they have added or preserved to the assets or funds from which creditors must collect their claims something which under the law they could not otherwise secure, or would have lost but for such services; and which services inured to the benefit of all such creditors. 15 C. J. 104, § 208; Trustees of Internal Improvement Fund v. Greenough, 105 U. S. 527, 528, 26 L. Ed. 1157, 1158; Strong v. Taylor, 82 Ala. 213, 2 So. 760; Byrne v. First Nat. Bank, 20 Tex. Civ. App. 194, 49 S. W. 706; Texon Oil & Land Co. v. Hanszen (Tex. Civ. App.) 292 S. W. 563; 6 C. J. 782, § 394.

■■ Under our conclusions above discussed it is clear, we think, that nothing was added to the funds available to creditors, nor was the fund here in controversy in danger of being lost or misappropriated. Under the statute the creditors fixed liens upon same by giving notice of their claims to the highway commission. The funds were secure, in no danger of impairment, and the rights and remedies of creditors thereto specifically provided by statute, and available to such creditors upon their compliance with such statutory provisions. All creditors who were parties to this suit did not have a common interest in said funds; that is, their interests were not pro rata the same. In fact, the purpose of this suit was to assert priority of the claims of some creditors over others, and to defeat the claims of Thurber Construction Company, the largest creditor of Purvis & Son. All of appellees were not creditors of the same class as regards the entire fund. Seigler and Parks, as creditors, were not in the same class with the creditors of the defaulting subcontractors, which creditors had no privity of contract with Purvis & Son, the original contractors. Certainly creditors entitled to participate in the distribution of a common fund, not represented by appellees' counsel, should not be compelled to surrender a part of that fund to compensate attorneys representing clients whose interests were adverse to theirs and who were

seeking to defeat their very rights in the fund. And, if it be conceded that appellees' attorneys are entitled to recover out of said funds fees for their services in behalf of a certain class of creditors, such fees should be chargeable only against the portion of the fund in which that class of creditors are entitled to participate. Lochte v. Blum, 10 Tex. Civ. App. 385, 30 S. W. 925; Farthing Lumber Co. v. Greenwood (Tex. Civ. App.) 197 S. W. 313, 315.

■ Nor do the provisions of section 2, Acts 1929, 41st Leg. 2d Called Sess., p. 154, c. 78 (Vernon's Ann. Civ. St. Art. 5472b—1 § 2), supplementing the provisions of article 5472b Vernon's Ann. Civ. St., authorize, as urged by appellees, charging attorneys' fees against such funds. That statute relates to suit upon the bond therein provided for, and, upon recovery by claimants in such case, the costs would run against the contractor, as principal, and the surety on his bond, and could not be collected out of the funds impounded, nor charged against same, for the obvious reason that the purpose of that statute and of such bond was to release such funds and to substitute another source from which claimants could be paid.

■ Appellant next complains of the allowance by the trial court of the claim of Claude Owen for $1,098.53, for moneys paid out by him to laborers under L. G. Owen, defaulting subcontractor, at the latter's request, with the understanding and agreement between them that Claude Owen should be reimbursed out of funds due to L. G. Owen under his subcontract. While the funds were not turned over by Claude Owen to his son L. G. Owen, and by the latter paid out to his laborers, the result, we think, is the same. No assignment was taken by Claude Owen from the laborers whose claims he had paid, nor had such laborers ever filed any claims themselves. On the contrary, Claude Owen took a note from L. G. Owen for the amount he had so paid out, and an assignment from L. G. Owen of the amount due the latter by Purvis & Son under his subcontract. It is clear, we think, that Claude Owen relied upon his son to reimburse him out of such funds as were then due him, or might thereafter become due him, by Purvis & Son, and not upon any subrogation from the laborers who were entitled to fix a lien. That being true, he was not entitled to a lien on the funds of the general contractor any more than a bank or any other creditor would have had under like circumstances. Employers' Cas. Co. v. Wolfe City, 119 Tex. 552, 25 S.W.(2d) 320,

35 S.W.(2d) 694; Employers' Cas. Co. v. Rockwall County, 120 Tex. 441, 35 S.W.(2d) 690, 38 S.W.(2d) 1098; Brooks Construction Co. v. First State Bank (Tex. Civ. App.) 39 S. W.(2d) 83; Huddleston & Work v. Kennedy (Tex. Civ. App.) 57 S.W.(2d) 255, 259; Southern Surety Co. v. Sealy Independent School Dist. (Tex. Civ. App.) 10 S.W.(2d) 786. We conclude, therefore, that Claude Owen was not entitled to a lien on said fund for the sums paid out by him for the benefit of L. G. Owen.

■ ■ The remaining assignments of appellant complain of the allowance of claims as liens against said fund of several parties, all of which, except a part of the claim of John Kemplin, were for feed furnished for teams of employees under subcontractors on said work. We deem it unnecessary to set them out in detail. In so far as feed for animals used on said project is concerned, such materials would fall within the same classification as fuel for motor vehicles and machinery used in such construction work. These materials were held by the Supreme Court to come within the purview of the statute in Employers Cas. Co. v. Rockwall County, supra; United States Fidelity & Guaranty Co. v. Henderson County (Tex. Com. App.) 276 S. W. 203. In so far as the groceries furnished by Kemplin to employees of said subcontractor are concerned, lien therefor would depend upon whether under the facts and circumstances it was reasonably necessary for the subcontractors to furnish same to their employees, and whether they were actually used in connection with such construction work. Davis Co. v. W. E. Callaghan Const. Co. (Tex. Com. App.) 298 S. W. 273; Southern Surety Co. v. W. E. Callahan Const. Co. (Tex. Civ. App.) 283 S. W. 1098; Foty v. Rotchstein (Tex. Civ. App.) 60 S.W.(2d) 892.

■ It is to be noted, however, that most of these claims were for materials furnished to employees of the defaulting subcontractors. They would, of course, be entitled to participate in said fund only to the extent of their pro rata part of such fund as had been earned by those defaulting subcontractors, as hereinabove indicated. The account of the Whitesboro Oil Mill, however, was for oats furnished to D. H. Seigler, who completed his subcontract. That claim would, of course, along with all others of the same class, be payable out of the portion of said fund due to Seigler under his contract.

■ Appellant F. C. Crane Company complains of the reduction of its claim. Its claim was for explosives furnished L. G.

Owen, and for the use by Owen of an elevating grader for loading dirt into wagons, and for a caterpillar tractor used in connection therewith. It bases its claim, with reference to the use of said machinery for a period of three months, on what it contends was a lease thereof to Owen under written contract. This contract, though designated as a rental contract, provided for payment by Owen of $570 per month for a period of five months, at the end of which time title to the machinery should vest in Owen. Obviously this was merely a sale contract on monthly payment plan. The contract was never carried out, however, and negotiations concerning a new contract of sale likewise failed. The machinery, after default by Owen on his subcontract, was redelivered to F. C. Crane Company. The trial court, after hearing evidence as to its reasonable rental value for the time used, found that the reasonable value of the use of such machinery during such period on the project in question was $400, and allowed same accordingly. There was evidence to sustain this finding, and such amount, plus the value of the explosives used, aggregated the amount of the claim allowed. We find no error of the trial court in that respect.

For the reasons stated, the judgment of the trial court is reversed, and the cause remanded for another trial.

Reversed and remanded.