**HILL et al. v. MAYS, County Judge, et al.**
(No. 6916.)

(Court of Civil Appeals of Texas., Austin.
Nov. 18, 1925.    Rehearing Denied
Dec. 16, 1925.)

**1. Elections ⬤➾71—Intention considered in determining residence under election statutes.**

Intention is to be considered in determining one's residence, under election statutes, Const. art. 6, § 2, Rev. St. 1911, art. 2939, as amended by Acts 37th Leg. (1921) c. 113, § 1 (Vernon's Ann. Civ. St. Supp. 1922, art. 2939), and Rev. St. 1911, art. 2952, where question has been raised against one seeking to vote outside his actual physical place of residence, as defined in article 2941.

**2. Schools and school districts ⬤➾38 — Facts and circumstances held to sustain conclusions of law that person was not resident of school district entitled to vote at consolidation election.**

That person had purchased home outside of district, and had moved with his family to newly purchased home, and rendered children in scholastic census of town, *held* sufficient to sustain conclusion of law that he was not resident of school district, from which he had moved, entitled to vote at consolidation election.

**3. Schools and school districts ⬤➾38—Owner of land, removed from district wherein it was located, held not legal voter.**

Owner of land in school district, who had removed to town and resided continuously for nearly two years previous to election, having rented farm, retaining no right of control or possession, and who has been assessed for city poll tax in town in which she lived, *held* not a resident of school district where land was located, and therefore not a legal voter at consolidation election.

---

⬤➾For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**4. Schools and school districts ⊜⇒38—Widow, who had removed from school district, and had not resided therein six months preceding election, held not qualified voter.**

Widow, who owned land in school district on which she had resided, removing therefrom more than two years previous to election, having rented place to son, with right of possession, although spending part of summer with son, and who had not paid poll tax within school district, and had not resided in county six months preceding election, *held* not a qualified voter at consolidation election.

**5. Schools and school districts ⊜⇒38—Widow, owning life interest in land in school district, and spending all her time with married children, held not resident of district.**

Widow 82 years of age, owning life interest in land within school district, who spent all of her time with married children, making short visits back to school district for periods of three or four days, visiting people who were no kin to her, *held* not a resident of school district, and therefore an illegal voter at consolidation election.

Appeal from District Court, Navarro County; Hawkins Scarborough, Judge.

Action by F. T. Hill and others against A. P. Mays, County Judge, and others, to contest an election. From a judgment for contestees, contestants appeal. Affirmed.

Jester & George and Callicutt & Johnson, all of Corsicana, for appellants.

H. C. Bishop, of Hubbard, and Richard Mays, of Corsicana, for appellees.

BLAIR, J. This appeal involves the contest of an election held June 23, 1923, for the purpose of determining whether Dover common school district should consolidate with Headquarters common school district, both in Navarro county. The contest relates solely to the election results in the Dover district, which the commissioners' court declared in favor of consolidation by a vote of 30 to 29

The contest is based upon the fact that J. F. Freeland, Mrs. W. O. McDonald, and Mrs. L. F. Perry, alleged to be residents of said school district and qualified voters at said election, were not allowed to vote by the election officials, and that if they had been allowed to vote each of them would have voted against consolidation, which would have changed the results of the election to be against consolidation.

Contestees by a cross-plea alleged that Mrs. S. J. McDonald, commonly known as Grandma McDonald, was illegally allowed to vote against consolidation; she not being a resident of the district.

The case was tried before the court without the intervention of a jury, and resulted in a judgment upholding the election and declaring the state of the ballot to be 30 to 28

in favor of consolidation, which was the result of a finding by the trial judge that neither of the above named were qualified voters at said election because neither of them were residents of the district, and that Mrs. Perry did not possess a poll tax authorizing her to vote in Navarro county.

We adopt the findings of fact by the trial judge as to the disqualifications of these alleged voters to participate in the election. The findings relating to J. F. Freeland read:

"The court finds that J. F. Freeland formerly lived in the Dover school district, and had resided there previous to his moving to Dawson for a period of eight years; that he owned 150 acres of land in said district, which he continued to farm after he moved to Dawson; that his residence on said farm was occupied by his married son; that on July 1, 1922, said Freeland, together with his wife and children, moved to the town of Dawson, purchased him a home, for which he paid $4,250, and purchased several hundred dollars worth of furniture, and moved into said home; that, before he moved to Dawson, his children were rendered in the scholastic census for school purposes in the Dover school district, and that, shortly after he moved to Dawson, he had them transferred to the Dawson school district, in July, 1922; that he paid his poll tax for 1922, but he did not pay any city poll tax in Dawson for 1922, as he did not reside there on January 1, 1922; that, while living in Dawson with his family, his children attended the Dawson school, and Freeland went back and forth to his farm, a distance of about six miles, and had the same cultivated during 1923; that in 1923 Freeland's children were rendered in the scholastic census for school purposes as residents of the town of Dawson, and Freeland was assessed for a city poll tax in the town of Dawson for 1923, which has not been paid by him at the time of this trial, December 19, 1923. In the fall of 1923, Freeland with his family, went back to the farm for a period of about two months during the cotton picking season, but, as soon as his crop was gathered and school started in Dawson, he went back to Dawson with his family to his residence there. Freeland claimed that while he lived in Dawson it was for school purposes only, and that his home was still on his farm in the Dover school district. He was denied the right to vote by the officers of the election, and upon the above facts the court finds that he was an actual resident of the town of Dawson on June 23, 1923, and was not a resident of the Dover school district."

Contestants base a proposition upon the conclusion of law that J. F. Freeland was not a legal voter at said election; he not being a resident of the district. We overrule the proposition. On this question the following summary of the law may be helpful:

Constitution, art. 6, § 2, provides:

"Every person subject to none of the foregoing disqualifications, * * * who shall have resided in this state one year next preceding an election and the last six months within the district or county in which such person offers to vote, shall be deemed a qualified elector."

---

Revised Statutes, art. 2939, as amended by Acts of the 37th Legislature, c. 113 (Vernon's Ann. Civ. St. Supp. 1922, art. 2939), provides that:

One "who shall have resided in this state one year next preceding an election, and the last six months within the district or county within which he or she offers to vote, shall be deemed a qualified elector."

Revised Statutes, art. 2941, defines "residence," within the meaning of the election laws, as follows:

"The 'residence' of a single man is where he usually sleeps at night; that of a married man is where his wife resides, or if he be permanently separated from his wife, his residence is where he sleeps at night."

Revised Statutes, art. 2952, provides:

"If a citizen, after receiving his poll tax receipt or certificate of exemption, removes to another county or to another precinct in the same county, he may vote at an election in the precinct of his new residence in such other county or precinct by presenting his poll tax receipt or his certificate of exemption, * * * and that he then resides in the precinct where he offers to vote and has resided for the last six months in the district or county in which he offers to vote and twelve months in the state."

In the case of Barker v. Wilson, 205 S. W. 543, this court held:

"When an election is contested upon the ground that one or more persons were unlawfully denied the right to vote, it devolves upon those who so attempt to set aside a declared result of the election to show by clear and satisfactory testimony that such persons possessed all the necessary qualifications of a voter."

In the case of Savage v. Umphries, 118 S. W. 893, the San Antonio Court of Civil Appeals construed the word "residence" within the purview of the election laws to mean:

"Under the election law * * * providing that the residence of a single man is where he usually sleeps at night, and that of a married man is where his wife resides, if he be not permanently separated from her, one's residence must be determined by actual facts; and where the testimony shows that a voter lived 'with his family' in Amarillo, and that, though he owned a ranch, which he considered his home, he had not lived on it since moving to the town, his 'residence' was in Amarillo, whether his wife was living or not," and his vote should not have been rejected. "So, in either event, his residence, in contemplation of our election laws, was in the city of Amarillo on January 1, 1906, for under such law one's residence must be actual, and determined by actual facts, and not by the intention of the voter."

Both parties to this appeal have cited the above case, and also Aldridge v. Hamlin (Tex. Civ. App.) 184 S. W. 602; Linger v. Balfour (Tex. Civ. App.) 149 S. W. 795; Marsden v. Troy (Tex. Civ. App.) 189 S. W. 960; Rath-gen v. French, 22 Tex. Civ. App. 439, 55 S. W. 578; Reid v. King (Tex. Civ. App.) 227 S. W. 960; and the above statutory provisions in support of their respective contentions.

Contestees cite in addition the case of Garvey v. Cain (Tex. Civ. App.) 197 S. W. 765, while contestants cite Huff v. Duffield (Tex. Civ. App.) 251 S. W. 298, and other cases, as being in conflict with Garvey v. Cain, supra, which case they contend to be against the great weight of authority. In Garvey v. Cain, supra, it is held:

"Our present statute seems to clearly enough define what is meant by 'residence,' that is, actual physical living in a place, thus furnishing a test which can be practically applied by election officers and courts, a test of fact, instead of an abstract test of 'intention,' which necessarily could not be applied by any one except the voter himself, and by him in as many different ways and in reference to as many different places as might suit his convenience at different times. * * * If the facts of physical presence are to be given any significance whatever, then there can be no warrant for giving them any degree of significance short of that plainly called for by the statute, that is, a significance exclusive and controlling."

In Huff v. Duffield, supra, it is held:

As to "the word 'residence,' as used in the election law and through a long line of decisions, it has been held that the intention of the individual often has a strong, if not a paramount, influence in determining residency."

Contestees cite the following text from the authority 20 Corpus Juris, 69, relating to this apparent difference of opinion:

"Some constitutional provisions relating to the qualifications of voters provide that a voter must be a bona fide resident of the place where he offers to vote. Under such provisions, the word 'residence' does not mean 'domicile,' but the abode at which a man actually lives and works. The law considers the fact of residence, rather than the intention of the parties. Also, statutes which provide that the residence of a single man for voting purposes shall be deemed to be the place he usually sleeps at night, and that of a married man where his wife resides, make the test one of actual physical living in a place, rather than one of intention."

The text above quoted cites as authority for it Garvey v. Cain, supra; Savage v. Umphries, supra; and Linger v. Balfour, supra.

In Railway v. Thompson (Tex. Civ. App.) 140 S. W. 1148, "residence," within the meaning of the venue statute, is defined:

"'Residence' is defined by Webster to be a dwelling in a place for some continuance of time; and we think there must be a settled, fixed abode, and an intention to remain, at least for a time, for business or other purposes, to constitute a residence within the meaning of our statute."

Black's Law Dictionary (2d Ed.) p. 398, has this to say:

"Domicile and residence are not synonymous. The domicile is the home, or fixed place of habitation, while residence is a transient place of dwelling."

In Bartlett v. City of New York, 7 N. Y. Super. Ct. 44, it is held:

"The domicile is the habitation fixed in any place, with an intention of always staying there, while simple residence is much more temporary in its character. N. Y. v. Genet, 4th Hun (N. Y.) 489."

In Chase v. Miller, 41 Pa. 403, it is held:

" 'Residence' as used in the Constitution requiring a voter to have a residence in a district ten days next preceding the election, did not restrict the term to its ordinary meaning, which is the place where a man establishes his abode, makes the seat of his property, and exercises his civil and political rights; but the Constitution uses the word in an indefinite sense, leaving the subject of 'residence' in an election district to legislative discretion."

[1, 2] While it may not be material under the view we take of this case to consider the difference in opinion expressed in the two cases quoted from, we think it is clear that intention is to be considered in determining one's residence under our election statutes, where the question has been raised against one seeking to vote outside his actual physical place of residence; that is, the statutes consider a married man to be where his wife resides, or, if he be permanently separated from his wife, his residence is where he sleeps at night, until the question of his residence is made an issue outside his physical residence, then it must be determined by the actual facts and circumstances surrounding the particular individual, and evidence of his intention may be of material value along with other facts and circumstances in determining the ultimate question, "residence." But the mere fact that one may declare his residence to be other than the place where his wife resides with him, especially where such declaration is made after the election at which he tried to vote, does not render such declaration sacrosanct and absolutely determinative of the issue. So in this case, the trial judge before whom the case was tried without a jury, having found as a matter of fact that Freeland was not a resident of the school district, and therefore not a qualified voter at the election held, must be sustained if there is evidence to sustain the finding. We think the findings of fact are amply sustained by the evidence as to J. F. Freeland. Since there is no dispute but that Freeland had actually moved with his family out of the school district where the election was held, it devolved upon him to show by clear and satisfactory testimony that he intended to return or to maintain his farm as his place of residence. There is no evidence of that

fact in the record further than his declaration on the trial of the case that he had always intended the farm as his permanent residence. We think the evidence points to the contrary, in that it shows that he purchased a home in Dawson, outside of the school district; that he bought quite an amount of furniture to furnish that home; that he moved with his family to the newly purchased home; that he rendered his children in the scholastic census of the town of Dawson as residents of such town; that he was assessed a city poll tax in said town of Dawson for the year 1923; and that he made no attempt to fix any date at which he intended to return to his former residence on the farm in the Dover school district, which facts and circumstances, we think, without question, sustain the trial judge's conclusion of law that he was not a resident of the school district on the date of the election in question.

As to the rights of Mrs. W. O. McDonald to vote at said election, the trial court made the following findings of fact:

"Mrs. W. O. McDonald moved to the town of Dawson from the Dover school district on the 1st of September, 1921, and has resided therein continuously since that time. She is a widow. She owns a tract of land in the Dover school district on which she had resided a number of years previous to her moving to Dawson, but, after she moved to Dawson, said farm was rented out by her to a tenant on a third and fourth basis, and she had no right of control or possession over said premises except as a landlord. She purchased her a home in the town of Dawson, for which she paid $2,000, and spent several hundred dollars additional for furniture. Her children were rendered in the scholastic census for school purposes in 1922 and 1923, as residents of the town of Dawson, and Mrs. McDonald was assessed for a city poll tax in the town of Dawson for 1922 and 1923, and the 1922 poll tax was paid by her. She has not paid her city poll tax for 1923 at the date of this trial. Except for a few visits to her farm in the Dover school district, which was five or six miles from Dawson, Mrs. McDonald has not been on her farm since her removal to Dawson. These visits to her farm sometimes lasted for several days, as the tenant living on said farm was her own father. Mrs. McDonald claimed that, while she was living in Dawson for school purposes, her voting precinct was at her farm in the Dover school district. The court finds as a fact that Mrs. W. O. McDonald was an actual resident of the town of Dawson on June 23, 1923, at the time she applied to vote in the Dover school district consolidation election, and that she was denied the right to vote by the election officials on the ground that she did not live in the Dover school district, but lived in the town of Dawson."

[3] The trial court concluded that Mrs. W. O. McDonald was not a resident of Dover school district, and that she was not a legal voter therein at the time of the election in question, which conclusion we sustain without further comment.

The court's findings of fact as to Mrs. L.

F. Perry's right to vote at the election in question are as follows:

"The court finds that Mrs. L. F. Perry owns a piece of land in the Dover school district on which she resided a number of years and that she is now a widow; that in 1921 she moved to Hubbard City, Hill county, Tex., and rented her place out to her married son, who, as her tenant, had the exclusive right of possession to the same; that Mrs. Perry rented her a home in Hubbard City, resided there, and sent her child to school; that in 1922 Mrs. Perry was assessed for a city poll tax in Hubbard City, which she paid, and was assessed for a state and county poll tax in Hill county, which she paid; that in 1923 Mrs. Perry was assessed for a city poll tax in Hubbard City, and a state and county poll tax in Hill county, but that same have not been paid at the date of this trial; that Mrs. Perry was not assessed for a poll tax in Navarro county, Tex., for either 1922 or 1923, and her real property in the Dover school district was assessed on the nonresident roll. During the trial of this case Mrs. Perry paid her poll tax for 1923 in Navarro county, for which she had not been assessed. After school would be out in Hubbard City, while she was living there, and during the summer, Mrs. Perry would usually go to her farm in the Dover school district and spend a good part of her time with her married son, but always returned to Hubbard City to her residence there to send her children to school. Mrs. Perry claims that she was living in Hubbard City for school purposes only, and that her home was on her farm in the Dover school district. She was denied the right to vote by the election officials on the ground that she did not live in the Dover school district, but lived in Hubbard City, and had only returned to the Dover school district on the 29th day of May, 1923, and had not resided therein for a period of six months previous to the election. The court finds as a fact that Mrs. L. F. Perry was an actual resident of Hubbard City on the date of the election in question, and, further, that she paid no poll tax in Navarro county for 1922, and that she could not vote in an election held in Navarro county on a poll tax paid in Hill county, unless she had lived in the district six months previous to the election, which she had not done."

[4] We think it beyond a question of a doubt that under the above findings of fact, which are supported by the evidence, Mrs. Perry was not a resident of the school district in question at the time the election was held within the meaning of our residence statute. It also appears that the only tax receipt possessed by Mrs. L. F. Perry was the one paid by her in 1922, in Hill county, Tex. It further appears that she only returned to Dover school district a few days previous to the election, and that she had not resided in Navarro county six months preceding the election, nor in the school district six months preceding the election, and was therefore not a qualified voter at said election. Linger v. Balfour, supra.

As to the right of Mrs. S. J. McDonald, commonly called Grandma McDonald, to cast her vote at the election in question which she was permitted to do, and which vote was cast against the consolidation, the trial court made the following findings of fact:

"The court finds that Mrs. S. J. McDonald, commonly called Grandma McDonald, owned a life interest in 80 acres of land in the Dover school district on which she had resided for many years as her homestead and that she owned no other property; that she is a widow and 82 years of age; that about three years ago Mrs. McDonald gave up her home in the Dover school district and went to live with her two daughters near Munger, in Limestone county, Tex.; that she spent most of the winter with her daughter, Mrs. Cole, and most of the summer with her daughter, Mrs. Sammons, who resided in Limestone county, Tex.; that she sometimes visited her other children for a short period, one of whom lives in south Texas, one in west Texas, and one in Oklahoma; that she would sometimes make short visits back to the Dover school district for a period of three or four days, and would stay with the tenant who lived on her old home place, and would visit Mrs. T. F. Hill and an old friend by the name of Grandma Jackson; that none of said last-named parties are any kin to her, and she would only spend a few days with them, and then return to her daughters in Limestone county; that she had not resided on her place in the Dover school district for a period of three years. She claimed that her place in the Dover school district was her home for voting purposes, although she had never voted in any election previous to that time. She was visiting in the Dover school district at the time of the election in question, and was permitted to vote by the election officials. She voted against consolidation of the districts. Her vote is attacked by the contestees on the ground that she was not a resident of the Dover school district, but was a resident of Limestone county, and not a legal voter. The court finds as a fact that Mrs. S. J. McDonald was an actual resident of Limestone county at the time said election was held, and had been for approximately three years previous to said election, and that her vote was therefore illegally cast and should be deducted from the number of votes cast against consolidation."

[5] The trial court concluded as a matter of law, based upon his findings of fact, that Mrs. S. J. McDonald was a resident of Limestone county, and was an illegal voter at said election, and that her vote should be deducted from the number of votes cast against consolidation. Under the above findings of fact, which we find to be supported by the evidence, this conclusion of the trial court is undoubtedly correct.

The judgment of the trial court will be affirmed in all things.