## McBETH v. STREIB.

### No. 10117.

Court of Civil Appeals of Texas. San Antonio.

Oct. 1, 1936.

Rehearing Denied Oct. 5, 1936.

Morriss & Morriss, of San Antonio, for appellant.

Ditzler H. Jones, of Uvalde, for appellee.

BOBBITT, Justice.

This is another primary election contest which comes here on appeal from the district court of Uvalde county, which court, after a lengthy hearing, entered judgment awarding the Democratic nomination for the office of county commissioner precinct No. 3, of said county, to appellee, Fritz Streib, as a result of the run-off primary held on August 22, 1936.

Appellant McBeth, and appellee Streib, were the runners-up, or two high candidates, in the general primary on July 25, 1936, as candidates for the stated nomination. They were rival candidates, and of course the only two candidates for such nomination at the run-off primary held on August 22. By the official canvass made by the election officers on August 29th thereafter, appellee Streib was declared the winner by a majority of 23 votes, and certificate of nomination was, accordingly issued to him as the Democratic nominee for such office.

On September 4th thereafter, appellant McBeth filed his contest of such nomination, and on September 12th the trial of the issues presented on this appeal was commenced before the Honorable Brian Montague, regular judge of the Sixty-Third judicial district of Texas, and presiding in this cause for the Honorable Lee Wallace, regular judge of the Thirty-Eighth judicial district.

The pleadings of the parties were sufficient to authorize the evidence admitted at the hearing and to present the questions and propositions raised in this appeal.

On the trial the court sustained fifteen challenges made by appellee to votes which had been counted for appellant, and twenty-five challenges made by appellant to votes which had been counted for appellee. As a result of the trial, the court held that appellee Streib received a majority of thirteen legal votes, and entered judgment declaring him to be the Democratic nominee of such primary.

Appellant concedes that there is one controlling issue presented in the appeal. That issue, or question, is this: Are citizens of Texas, who are in all other respects qualified to vote at a primary election held for precinct officers in the precinct where they reside, disqualified to vote at such elections on the sole ground that they are enrollees in and members of the Civilian Conservation Corps and subject to the rules and regulations of such organization? In other words, appellant herein contends that an enrollee in or a member of such government organization cannot acquire "residence" in any voting precinct where he may be living and while a member of such organization which will entitle him to vote, he being in all other respects fully qualified under the law as an elector in such precinct.

There are questions raised concerning qualifications of four other voters whose votes were challenged on other grounds, but we need not discuss the propositions raised respecting the legality of their votes, if we conclude that the judgment of the trial court overruling appellant's challenge of the eighteen ballots cast by members of the Civilian Conservation Corps should be affirmed. The proper answer to the question concerning said eighteen votes will determine the appeal.

Appellee contends that the trial court was without jurisdiction to hear this case, on the ground that the regularly elected and qualified judge of the Thirty-Eighth judicial district did not authorize and direct the issuance of notice as provided by law in such cases. Furthermore, appellee contends that the trial court should have sustained his plea to dismiss this proceeding on the ground that the issues would become moot before the cause could be tried and the appeal taken as provided by law.

Both these contentions are overruled. A special district judge, regularly elected as such, or a regular district judge sitting in another district, through arrangements authorized by law, and in accordance with such laws, either at a regular or special

term of the district court, is empowered to perform any duty and to exercise any authority which the duly elected and qualified judge of the district could perform or exercise within such county. 25 Tex.Jur. 326, and authorities cited.

■ Appellee's contention that this cause was moot, when filed, is overruled for the reason that contests of primary elections, as this, have priority, and are required to be advanced, on the dockets of all courts; and taking into consideration the date of the filing of this contest and the requirements for advancing the proceedings, we cannot hold, as a matter of law, that it was or would be physically impossible for the parties to get the issues determined, in regular order, before the questions become moot. Article 3153, R.S. 1925, as amended by Acts 1931, c. 241, § 2 (Vernon's Ann.Civ.St. art. 3153); Oliver v. Freeland (Tex.Civ.App.) 74 S.W.(2d) 711; Sterling v. Ferguson, 122 Tex. 122, 53 S.W.(2d) 753.

We come, then, to the controlling question involved in the appeal.

It is undisputed, or determined by the trial court on disputed and substantial evidence, that Frank Navarro, J. W. Davis, Arthur Wharton, Clay Hoag, Emerence L. Mack, Grover C. Butler, Albert Richards, M. H. Davis, Thomas Dunlap, Leopoldo Gomez (Tamez), John W. Shane, R. L. Winans, J. H. Bohmenblust, Earl King, Byron Ashabranner, Alfred Menendez, Charles Lightfoot, Jr., N. D. Bradford, were each citizens of Texas; that each and every one of them had resided in Texas for more than one year, and in the voting precinct in Uvalde county, where they cast their ballots, more than six months next preceding the election in question. As a matter of fact, practically all of such persons are native-born citizens and life-long residents of the state. Likewise, it is undisputed, or found by the trial court on disputed and sufficient evidence, that each of said eighteen citizens (1) either paid their poll tax, as required by law, or secured their exemption certificates, or exercised their legal rights otherwise under lawful exemptions prior to the date of the election; and (2) actually voted at the said election as held; and (3) each such voter is a single man, over twenty-one years of age at the date of the election, and "eats and sleeps" in the barracks provided by the United States

government situated on Garner State Park, which is owned by the state of Texas.

No question was raised or challenge made to their right to vote before, or at the very time of, the election.

It is significant and important, we think, that there is no charge of corruption, fraud, or wrongdoing on the part of any of these voters or any one connected with the granting of their poll taxes, or exemption certificates prior to the election, or any officer of the election. The 'sole ground and contention of disqualification asserted against each of such voters is that by reason of their enrollment in the Civilian Conservation Corps and subjecting themselves to rules necessary or incident to such employment and status, they had not acquired and could not acquire residence in the precinct where they lived and voted, under the circumstances stated, at the said election held on August 22, last.

■ Appellant earnestly insists that the same rule or reason which lies back of the constitutional and statutory provisions denying the right of persons in the military or naval service to vote, or to obtain the necessary residence requirements to enable one to vote (if otherwise not disqualified), should be applied to the status of these eighteen young citizens of Texas, and that by analogy and construction of our statutes relating to elections they should be denied the rights and privileges plainly provided for and 'enjoyed by other single men and citizens who are not in either the military service or engaged in the emergency public work conducted by the Civilian Conservation Corps.

We do not believe that our laws intended to encourage citizens to exercise their high privilege and duty of voting at all elections concerning their rights and choosing their public officials, and safeguarding and making effective such actions, should be construed in such a narrow and technical manner as to destroy such right and privileges and to disfranchise duly qualified and good-faith citizens in the exercise of their right of franchise.

Our organic and statutory laws, in plain' terms, deny the right of franchise to citizens in the military service. The reasons for such denial were properly determined by the adopters of the Constitution and members of our lawmaking bodies. There is no provision in our Constitution, or in any of our statutes, which by any rule of

fair and reasonable construction could be here applied to disfranchise these citizens of their right to vote; they each being otherwise fully qualified electors. We have reviewed and carefully considered the authorities cited and urged by able counsel for appellant as sustaining his contention, particularly the decisions of the appellate courts of this state, and we find that they do not support his contention. Had it been the intention of the framers and adopters of the Constitution, or the members of the Legislature, to deny the right of franchise to citizens situated as were and are the eighteen here under consideration, they should and would have so provided in plain terms. The subject is too important and rights involved entirely too serious and vital to depend upon implications or incidental and far-fetched constructions.

These eighteen citizens derive their right to vote from the Constitution and laws of Texas, and such right is not incidental or negative; it is positive and affirmative. They each complied with the statutes governing their right to participate in the election as held, according to the findings of fact duly made by the trial court, and applied to such statutes as shown by the judgment he entered herein. We find that the disputed questions of fact decided by the trial court are based upon substantial and sufficient evidence. We have considered the findings of fact of the trial court in the light and as applicable to the statutes of our state governing the rights of these eighteen challenged voters, and their conduct prior to and at the time of the election. Articles 2954 and 2955 set out their general qualifications and requirements. They each meet the tests there prescribed.

■ Article 2958, particularly applicable in this contest, plainly provides: "The 'residence' of a single man is where he usually sleeps at night," etc. Each of the eighteen voters here involved are single men. Each of them usually slept where they lived and worked. There is no provision or intimation that if they sleep on the grounds of a state park, or eat at a dining hall furnished by the federal or any other government, they are not residents of the locality or precinct in which they actually live.

■ In any event, it is well settled, we think, that the question of one's residence in this state is distinctly one of intention and of fact. McCrary on Elections (4th Ed.) § 99, p. 74; article 2958, supra; Savage v. Umphries (Tex.Civ.App.) 118 S.W. 893; Stratton v. Hall (Tex.Civ.App.) 90 S.W.(2d) 865; Garvey v. Cain (Tex. Civ.App.) 197 S.W. 765; Marsden v. Troy (Tex.Civ.App.) 189 S.W. 960; Linger v. Balfour (Tex.Civ.App.) 149 S.W. 795; Huff v. Duffield (Tex.Civ.App.) 251 S.W. 298; Hogg v. Waddell (Tex.Civ.App.) 42 S.W.(2d) 488; also, McCrary on Elections (4th Ed.) § 101, p. 75.

Other articles of our statutes prescribe the rules governing the payment of poll taxes and the securing of exemptions, as a prerequisite to the privilege of voting. Article 2973 specifically provides for proof of residence on the part of the applicant for a poll tax or exemption certificate. If he has any doubt about the residence of any applicant, it is the duty of the officer to whom application is made to require proof of the facts. It is clear, from the record before us, that no question was raised or proof required of any of the eighteen voters here involved. While this is not of particular importance in this decision, it does show the good faith of all concerned; and the securing of poll tax receipts and exemption certificates by these particular voters, as well as the actual voting on the day of the election, bear directly upon the questions of their intention and residence in the precinct.

■ The presumption, of course, obtains here, as generally in this state, that every man has the right and privilege of fixing his residence according to his own desires. This applies to single men as well as married men, though it is a matter of common knowledge that single men do change their places of residence more frequently than married men. That fact, however, does not change or take away their definite legal rights, if, as, and when they comply with the law and acquire same under a change of residence or otherwise. It is equally true that a man is presumed, ordinarily, to "reside" where he "lives," and this is true for voting privileges, provided he has lived there for the length of time prescribed by law; and certainly this is true if he declares such to be his intention and he proceeds to perform the acts and duties incident to legal residence, such as securing his poll tax receipt or exemption certificate, and for the very purpose of so doing, and then actually votes, at the local or precinct elections of his residence. McCharen v. Mead (Tex. Civ.App.) 275 S.W. 117; Hogg v. Waddell,

supra. It should not be overlooked that there is a distinction between the terms "residence" and "domicile." Hill v. Mays (Tex.Civ.App.) 278 S.W. 919, and authorities there discussed.

█ It is clear to us that these citizens, all being single men, even though they were at the time, and now are, members of the Civilian Conservation Corps, and subject to all its rules and regulations, were not then, and are not now, disqualified to vote in the precinct of their "residence" by reason of their membership in such organization.

It is our opinion that the trial court correctly decided the issues presented, and entered the proper judgment in this cause, and that such judgment should be in all things affirmed. It is so ordered.

This is a summary proceeding under the statutes, and in order that this election contest may not become moot before final disposition, appellant is allowed two days within which to file motion for rehearing.