## LOUDERMILK v. WILSON.

### No. 2713.

Court of Civil Appeals of Texas. Eastland.

Sept. 30, 1948.

J. Edward Johnson and Levie Old, both of Brownwood, for appellant.

Darrell Shelton, J. C. Darroch, Gib Callaway, Geo. B. Savage and T. C. Wilkinson, all of Brownwood, for appellee.

PER CURIAM.

In the run-off primary on August 28, 1948, A. E. Wilson and F. A. Loudermilk were candidates for the Democratic nomination as County Judge of Brown County. The Democratic Executive Committee of Brown County canvassed the returns and certified that Loudermilk received 2,918 votes and Wilson received 2,906 votes. The Committee certified Loudermilk as the nominee on September 1st and instructed that his name be placed upon the ballot at the general election. On September 6, 1948, Wilson filed a contest in the District Court of Brown County alleging that the votes had not been correctly counted in three of the voting boxes. On September 7, 1948, Wilson filed an amended petition and, in addition to the allegation made originally, charged that all the votes in the Brookesmith voting box were illegal because the presiding judge failed to sign the ballots. Loudermilk filed an answer and cross action in which he alleged the invalidity of votes in Woodland Heights, Bangs, Chapel Hill and Winchell, because presiding judges failed to place their sig-

natures on the ballots cast there. The case was called for trial on September 15, 1948, and Wilson at said time filed his second amended petition. This petition added a paragraph in which Wilson alleged that the votes in Ward 1 should not be counted because the presiding judge did not sign her name on the ballots. Loudermilk filed a plea in abatement and exception to the effect that the amendment raising the question of the legality of the votes in Ward 1 came too late, that is, not within ten days after issuance of the certificate of nomination, and should be stricken. See Vernon's Ann.Civ.St. Art. 3152. Upon a hearing, the court held that 1,727 illegal votes were cast. That said votes could not be counted because the presiding judges did not sign their names on the ballots; that 805 of such votes were cast for Wilson and 922 for Loudermilk; the court ordered such votes subtracted from those received by each of the parties. When this was done Wilson had 105 more votes than Loudermilk. The court decreed Wilson to be the nominee and ordered his name placed on the ballot. Loudermilk has appealed.

Appellant contends the court erred in permitting appellee to file his second amended original petition in which Wilson alleged for the first time the invalidity of the ballots cast in Ward 1, Brownwood, on the ground that the presiding judge there did not sign her name on the back of the ballots. Appellant says this allegation of illegality was made too late because filed more than ten days after issuance of the certificate of nomination to Loudermilk.

In passing upon the question thus presented, it is necessary that we construe Articles 3152 and 3130, and determine whether they are in conflict in this particular and, if so, which controls. Article 3152, as amended by the 47th Legislature in 1941, provides that certificates of nomination shall be subject to review, upon allegations of fraud or illegality, by the district court, provided such allegations are filed within ten days after issuance of a certificate of nomination. Thereafter, but at the same session of the Legislature, Article 3130 was amended. As amended it gives the parties to such a contest the right to amend before announcing ready

for trial and to set up additional causes of action or matters of defense. It provides that any further changes in the pleadings shall be within the sound discretion of the court and that the trial court shall have "wide discretion as to matters of pleading, procedure and admissibility of evidence".

■ Article 3152 makes no reference to amendments of pleadings. One of the evident purposes of the 1941 amendment to Article 3130 was to prescribe the procedure in the district court in contests for nominations growing out of primary elections. Article 3130 expressly authorized the filing of appellee's amended pleading. The Beaumont Court of Civil Appeals so held in Meriwether v. Stanfield, 196 S.W.2d 704.

■ Within ten days after issuance of the certificate of nomination Wilson filed his first amended petition challenging the actions of the election officers in Precinct 27 at Brookesmith, Precinct 17 at May and Precinct 1, or Ward 1, in Brownwood. He alleged that through accident or mistake, votes cast for him in each of said boxes were counted for his opponent "thereby illegally and wrongfully" showing that the majority of the votes cast in said boxes were cast for his opponent, when in fact Wilson had received at least 99 more votes in said boxes than shown by the official count, which, if properly counted, would have changed the result of the election. Wilson alleged that the 84 votes cast in Brookesmith were wrongfully and illegally counted because, among other reasons alleged, the signature of the presiding judge was not on the ballots. We think such allegations constituted compliance with the requirement of Article 3152 that allegations of either fraud or illegality be filed within ten days after issuance of the certificate of nomination. As heretofore stated, Article 3130 expressly provides that both parties shall have the right to amend before announcing ready for trial and set up additional causes of action. This certainly authorized the appellee's amendment alleging illegality in Ward 1, Brownwood, in that, the presiding judge did not place her signature on the ballots cast there. We conclude there is no conflict between said articles relative to the amendment of pleadings

as applicable here. See Wright v. Broeter, 145 Tex. 146, 196 S.W.2d 82; Cain v. State, 20 Tex. 355; McGrady v. Terrell, 98 Tex. 427, 84 S.W. 641. However, if the articles were in conflict with reference to filing amended pleadings more than ten days after issuance of certificate of nomination, we would have to give effect to the provisions of Article 3130, which expressly authorized the filing of appellee's second amended petition, because Article 3130 is the last expression of the Legislature on the subject. It was amended by H.B. No. 857, Acts 47th Legislature (1941) Chap. 635, page 1400 and Section 12 thereof provides that all acts in conflict therewith are repealed. In this connection, we call attention to the fact that the court informed appellant at the time he allowed the amendment to be filed that it would give appellant additional time if he was surprised at the matter set up in appellee's last amended pleading and appellant did not desire additional time to prepare to meet new charges made in said pleadings.

Appellant contends the Court erred in opening the ballot boxes in Ward 1 for the purpose of determining whether the presiding judge there had signed the ballots. He contends there was no evidence introduced which authorized the court to open that box. Article 3148 as amended in 1941 provides:

"In addition to the powers and authority granted to the District Courts by Article 3130, as amended by this Act, where fraud or illegality is charged, if such charges of fraud or illegality be supported by some evidence, or by affidavit of reputable persons, and the ends of justice seem to require it, the Court shall have authority to unseal and reopen the ballot boxes to determine controverted issues * * *".

■ Prior to the opening of the ballot box, Mrs. U. Y. Smith testified that she was the regularly elected or appointed election judge for Precinct 1 in Brownwood; that she did not hold the election in question as an election judge; that because of sickness in her home she was unable to do so; that she called the Chairman of the County Democratic Executive Committee and informed him that she could not act; that

the Chairman informed her he could not appoint someone else; that he told Mrs. Smith to appoint someone; that she appointed William J. Brewer; that when she voted at 5:00 o'clock on election day, Mr. Brewer was there acting as judge; that she did not sign her name on any of the ballots cast in that box; that she did not know whose name was signed on the back of the ballots there; that she did not know whether any name was signed on the back of the ballots. At the conclusion of testimony to the above effect, appellee asked the court to open the ballot box of Ward 1. Such action was objected to by appellant because there was no proof to justify the court in opening the box, whereupon the court inquired where Mr. Brewer was. He was informed by counsel that Mr. Brewer was in California, that he had moved there since the election, whereupon the court ordered the ballot box opened for the sole purpose of looking at the signature, if any, on the ballots. Clearly, such testimony constituted "some evidence" of illegality, which authorized the court to order the ballot box opened under the authority of Article 3148 quoted in part above.

When the box was opened, the ballots showed that none of them had the name of the duly appointed election judge, Mrs. U. Y. Smith, signed on the back thereof, nor was the name of the person attempted to be deputized by her on the back of any of said ballots, but some persons had signed the name U. Y. Smith, not Mrs. U. Y. Smith, across the back of the ballots. Said name was shown to have been written across the back of the ballots by different persons. Thus, it is conclusively shown that the duly elected judge did not sign her name across the back of said ballots. It is likewise shown that the person who actually acted as the presiding judge did not sign his name on the back of the ballots. It is not shown that Mr. U. Y. Smith, whose name was signed by different persons on the back of the ballots in said box, was present at any time during the holding of said election. The record indicates that he was at home sick. Only two possible questions could be presented by such a record. Did this constitute compliance with the statute, or substantial compliance therewith, as urged by appellant?

Article 3018 provides in part that the counting judges and clerks shall familiarize themselves with the "signature of the judge who writes his name on each ballot that is voted, and shall count no ballot * * * that does not bear the judge's signature * * *". Article 3012 provides that when a voter prepares his ballot he shall fold the same "so as to expose the signature of the presiding judge on the blank side * * *". Thus, it is demonstrated that the Legislature of Texas long ago expressly provided that no ballot should be counted that did not bear the judge's signature. Said provision has always been held to be mandatory. See Clark v. Hardison, 40 Tex.Civ.App. 611, 90 S.W. 342; Brigance v. Horlock, 44 Tex.Civ.App. 277, 97 S.W. 1060, 1061; Bass v. Lawrence, Tex. Civ.App., 300 S.W. 207; Ramsay v. Wilhelm, Tex.Civ.App., 52 S.W.2d 757; Davis v. Walcott, Tex.Civ.App., 96 S.W.2d 817. It has been held that the voter has the duty to see that the election judge signs his name across the back of his ballot. Bego v. Abrameit, Tex.Civ.App., 130 S.W. 2d 912.

In Walker v. Mobley, Tex.Civ.App., 105 S.W. 61, 63, it was held that a ballot was void and could not be counted where the signature of the presiding judge was written by another on the back of a ballot, even though it was done at the judge's direction and in his presence. In Miller v. Coffee, 118 Tex. 381, 15 S.W.2d 1036, 1037, our Supreme Court said:

"The purpose of the statute is to safeguard the integrity of the ballot by the specific requirement that all ballots cast must bear the signature of the election judge, and, further, that a ballot not bearing such signature shall not be counted. This precludes any inquiry into the regularity of the ballot or fairness of the count, and all other questions affecting the validity of the ballot, and arbitrarily as a matter of law, declares that such ballot shall not be counted. If such ballot shall not be counted, it would be in defiance of the statute to permit it to be counted upon any consideration whatever."

176

This court has no right to question the wisdom of the Legislature in requiring the election judge to sign his name on the ballot and to provide that if he does not do so it shall not be counted. It has long been the law and has been upheld by the Supreme Court. It cannot be held that there was a substantial compliance with the statutory requirement that the election judge shall personally sign his name on the back of each ballot.

All of appellant's points have been carefully considered and are overruled. The judgment is affirmed.

COURTNEY GRAY, J., not sitting.