## SPRAGGINS v. SMITH.
### No. 5937.

Court of Civil Appeals of Texas. Amarillo.
Oct. 9, 1948.

Frank R. Day and Griffin & Morehead, all of Plainview, for appellant.

LaFont & Tudor, of Plainview, for appellee.

PER CURIAM.

This is an election contest instituted by appellant, Fred Spraggins, against appellee, Julian B. Smith, who had been declared by the Democratic Executive Committee of Hale County to be nominated as the candidate of the said party for County Commissioner of Precinct No. 4 of that county. Appellant challenged the validity of nine votes which he alleged were illegally cast for appellee and without which appellant would be the proper nominee for such office. Appellee denied such charges and challenged the validity of six votes cast for appellant.

A trial to the court without a jury on September 17, 1948, resulted in a finding that at the Primary Election held on August 28, 1948, appellee received 236 valid and legal votes and appellant received 234 valid and legal votes. Appellee was adjudged the Democratic nominee for the said office and an appeal was immediately perfected to this Court together with a motion to advance the cause for a hearing and such motion was granted.

Appellant predicates his appeal upon five points of error, each of which is resisted by appellee. Appellant first complains that appellee's answer, as contestee and the matters set out therein should not have been considered by the trial court and should not be considered by this court because such answer had not been filed within the five day statutory period as required by Article 3130, as amended, Vernon's Annotated Civil Statutes.

The record reveals that appellee's name was certified as the Democratic Party nominee on September 1, 1948. Appellant's contest was filed thereafter on September 8, and the case was set for a hearing to be had at ten o'clock a.m. on September 17. Appellee was served with citation on September 8 in which citation he was commanded to appear and answer appellant's petition on or before the hour and date set for the hearing. Appellee as contestee filed his original answer on September 17, 1948, before the hour set for trial. A few minutes thereafter, with leave of the court first had and obtained, appellant filed his first amended original petition. Soon thereafter appellee, with permission of the court, filed his first amended original answer. Both parties went to trial on their amended pleadings filed on the day of the trial and filed only a few minutes before the trial began. Appellant challenged the legality of nine votes in his amended pleading while he had previously challenged the legality of only four votes in his original petition. Appellee challenged the validity of the same six votes in each of his pleadings. The record reveals that before the trial appellant urgently requested that appellee's answer as contestee not be considered by the trial court because the same was not filed within five days from the date of the filing of the contest by appellant as required by Article 3130, as amended. The provisions of the Article to which appellant refers recites in part that "The contestee shall file his answer within five (5) days from the filing of such suit, but either party, or both, shall have the right to amend before announcing ready for trial and set up additional causes of action or matters of defense, as the case may be. Any further changes in the pleadings shall be within the sound discretion of the Court. In the trial of such cause, the trial judge shall have wide discretion as to the matters of pleadings * * *."

After hearing appellant's request and argument of counsel in support of such request the trial court pointed out that

appellee had answered in compliance with the command set out in the citation and further stated "I believe the court has a right to consider the answer unless there would be some circumstances that are not shown here that would make it unfair for some reason to consider it. I will hold that his answer is in time." Such a statement made by the trial court meant, in effect, that appellant's protest was overruled.

Primary election contests are governed by the provisions of Articles 3130 and 3152, as amended. Wright v. Broeter, Tex.Sup., 196 S.W.2d 82. It was recently held by the Eastland Court of Civil Appeals in the case of Loudermilk v. Wilson, 214 S.W.2d 172, that no conflict exists in the provisions of these two said Articles. In the case at bar, the trial court fixed the date for a hearing within ten days from the date of the filing of the contest and ordered service to be had on the contestee as the law provides. Appellee as contestee was served and he answered in compliance with the directions given him in the citation. While Article 3130, as amended says "The contestee shall file his answer within five (5) days from the filing of such suit," Article 3152, as amended by the same Legislature the same year, provides that "a copy of said grounds of contest, together with the notice of the date set for hearing shall be prepared and issued by the District Clerk and be served upon the contestee five (5) days before the hearing by said Court or Judge * * *". Since the hearing must be had within ten days after the suit is filed and since the contestee may not be served until five days before the trial, it is possible that the contestee would be required to answer the very day he is served if he complies fully and absolutely with the provisions of Article 3130 in filing his answer not later than five days after the contest is filed. Article 3130, as amended, authorizes either or both parties to amend the pleadings before announcing ready for trial and to set up therein additional causes of action or matters of defense. In the case at bar, both parties amended their pleadings only a few minutes before announcing ready for trial and went to trial on such amended pleadings. Appellee filed his original answer nine days after the suit had been filed. However, under the provisions of Article 3130, as amended, he could have complied fully with its terms by filing only a general denial within five days from the date the suit was filed and thereafter amended his pleadings before announcing ready for trial and set up all of his defenses in his amended pleading. In that event appellant would not have been any better off than if no pleading at all had been filed prior to the day of the trial, for appellant might have certainly contemplated a denial of his allegations by appellee. Article 3130, as amended, likewise provides that the trial court shall exercise sound discretion in the matter of making changes in the pleadings of such cases and it further provides that, "In the trial of such cause the trial judge shall have wide discretion as to matters of pleading * * *," in order "to subserve the ends of justice, rather than strict compliance with technical rules of pleadings * * *." The record reveals that the trial court construed the provisions of the law liberally in permitting the parties to join issues by their pleadings and that wide but sound discretion was exercised in the matters heard as evidenced by the trial judge's remarks hereinabove quoted when he overruled appellant's request to strike and not consider appellee's answer in the case. It is our opinion the trial court did not abuse its discretion in holding the statute in question to be directory and not mandatory and in hearing and considering appellee's answer. Appellant's complaint to the contrary is overruled.

Appellant next contends in point two that the trial court erred in holding Lura Helen Pinkerton was not a qualified voter in voting Precinct No. 12 and in Commissioners Precinct No. 4 in Hale County and in further holding that her vote was invalid. The trial court found that Lura Helen Pinkerton was not a qualified voter in the said precinct because she did not reside there. The findings of the trial court adjudicating residential qualifications for the purpose of voting will not be disturbed on appeal if there is any evidence of probative force to support such findings. In determining the sufficiency of the evidence, the appellate court will give credence only to the evidence and circum-

818

stances favorable to the findings and disregard all evidence and circumstances to the contrary.

■ Miss Lura Helen Pinkerton did not attend the trial or testify in the case. The record reveals that she lived with her parents on a farm in the said precincts in Hale County until October, 1942, when she moved to Washington, D. C., and accepted employment with the War Assets Administration. The record does not reflect whether or not she owns any property of any character anywhere. Her brother, Ward Pinkerton, testified that she was single and had resided in Washington, D. C. since 1942; that she had not resided in Hale County, Texas, since October, 1942; that she had been home twice since she moved to Washington and stayed at her mother's home several weeks each time; that the last time she was at home was in September, 1947, when their father died. The record reflects that her 1947 poll tax was paid on January 26, 1948. When her brother was asked as a witness about whether or not his said sister paid her poll tax for the previous year he answered, "Well, I don't really know; somebody paid it for her though." The Hale County tax collector testified that his records reveal that Lura Helen Pinkerton paid a poll tax in Hale County in 1941 and again in 1947; that he did not find where she had paid a poll tax in Hale County during any of the intervening years and he did not know who paid her poll tax for 1947.

Section 9 of Article 16 of our Constitution, Vernon's Ann.St., provides that absence on account of business or employment by the government will not forfeit a residence once obtained. It does not provide however that a voter or citizen of the state, although a single person, cannot change his or her place of residence. Under the facts and circumstances we believe the trial court was justified in finding that Lura Helen Pinkerton paid her poll tax in Hale County in 1941 before she moved to Washington, D. C.; that she did not pay another poll tax in Hale County thereafter but somebody else paid a 1947 poll tax for her in Hale County in order that she might vote in said county in 1948; and that the

trial court was justified in concluding as a matter of law from all of the facts and circumstances that Lura Helen Pinkerton no longer maintained her legal residence in Hale County but resided in Washington, D. C. where her brother testified she resided and had so resided since October, 1942. We therefore overruled appellant's point number two.

■ Under his third point of error appellant complains that the trial court erred in holding that V. C. (Virgil Claude) Witten was not a qualified voter in Precinct No. 12 situated in Commissioners Precinct No. 4 of Hale County and that his vote was invalid. The record reveals that Witten was a single man 34 years of age and that he had been teaching school part of the time in Plainview High School and part of the time in Wayland College in Plainview and that he likewise was engaged jointly with the other members of his family in farming. The record further reveals that he owned a farm situated in voting Precinct No. 12 which was known as the Halfway box and he and other members of his family were cultivating his said farm. While he was teaching in Plainview he kept a room there where he slept part of the time but he testified that he slept most of the time at the home of his parents who lived on a farm in voting Precinct No. 14 known as the Edmondson voting box and that his parents voted in the said Precinct No. 14. Witten further testified that he did not exactly have a home at Halfway in voting Precinct No. 12 but he worked on his farm in said precinct; that during a part of the past summer months he was engaged in irrigating his farm during which time he spent the night on the farm in said precinct; that he did not have a bed out there but he slept in his automobile during the nights he spent on his farm. He further testified that he usually slept at night either at Plainview or in the home of his parents and that he spent nearly every night last spring in the home of his parents and not in the Halfway voting Precinct No. 12. The evidence reveals that there was a house on Witten's farm but there is no evidence that he spent the night in such house at any time.

The legal residence of a voter cannot be established only by showing that he owns land in such precinct and that he sleeps in an automobile out there occasionally while irrigating the farm. Article 2958 of the Statutes provides that "The 'residence' of a single man is where he usually sleeps at night." Article 2936 provides that "All voters shall vote in the election precinct in which they reside." The record reveals that the trial court found that the legal residence of Witten was not in Halfway voting Precinct No. 12. Insofar as the record reflects the trial court did not make a finding as to where Witten's legal residence was, but such is not material in view of the finding made. Witten testified that he slept most of the time at the home of his parents but a part of the time at Plainview. The proof shows that neither place was located in Halfway Precinct No. 12 where he cast his vote. It is our opinion that the trial court was justified under the facts in finding that Witten's legal residence was not in Halfway voting Precinct No. 12 and that a vote cast there by him was invalid.

Appellant complains in points four and five because the trial court held the vote of C. F. Redinger cast in voting Precinct No. 13 in Commissioners Precinct No. 4 of Hale County was valid but held the vote cast by A. N. Redinger in the same precinct was invalid. The record reveals that these two gentlemen are brothers, that both of them have families and each of them owns a well improved farm situated in voting Precinct No. 13. The record further reveals that A. N. Redinger had lived with his family on his farm until 1944 when he turned the farm over to others to run and he moved his family to Plainview where he bought a home in which he and his family have since resided. He testified that he intended to continue to live in Plainview and he had no intentions of moving back to the farm. Under the testimony given by A. N. Redinger himself, the trial court was justified in finding that a vote cast by him in Precinct No. 13 was invalid.

The record reveals that C. F. Redinger had lived in voting Precinct No. 13 for more than forty years; that in September of 1947 his wife moved to Plainview for the benefit of the school for a grand-daughter who was living with them; that C. F. Redinger joined the family in Plainview about January 1, 1948 and they occupied a house he had bought in Plainview; that he continued to help operate the farm and went back and forth but often he and his wife both stayed a part of the time on the farm; that his granddaughter married during the school term but his wife and daughter were under medical treatment at Plainview and still remained there most of the time in order to be convenient to the doctor. C. F. Redinger testified that he stayed a part of the time in Plainview with his family but their home in Plainview was only temporary, since they were there first for the benefit of the school and more recently to be easily accessible to the doctor for medical treatment for the members of his family; that he considered his legal residence on the farm; that his wife talked all the time about moving back to the farm and they planned to move back sometime. Based upon these facts the trial court was justified in finding, as it did, that C. F. Redinger was residing in Plainview only temporarily for the benefit of the school and for the benefit of medical treatment there for his family and that it was his intention to move back to the farm. As a result of such findings the trial court was further justified in concluding that C. F. Redinger's vote cast in voting Precinct No. 13 was valid. Appellant's points numbers four and five are therefore overruled.

Appellant further represents to this court in his brief that he believes this court's opinion should be final and this court should so state and that its judgment should be effective immediately and that no motion for a rehearing should be entertained and no application for writ of error should be filed. He asserts that such should be the rule in this case because of the limited time element involved. In support of his position he cites the case of Polk v. Davidson, Tex.Sup., 196 S.W.2d 632. Both parties stated to this court in open court through their counsel that they would be willing to have such rules control and observe them.

A careful examination of the record and of the briefs reveal no reversible error committed. Appellant's points of error are all overruled and the judgment of the trial court is affirmed. In view of the agreement of the parties in open court to accept the judgment of this court as final and in view of the limited time in getting proper ballots printed for use in the general election, this court will not entertain a motion for a rehearing.

STOKES, Justice (dissenting).

I concur in the result reached in this case by the majority of the court but I hold a different view to that expressed by them upon the second point presented by the appellant. It concerns the qualification of Lura Helen Pinkerton to vote in voting Precinct No. 12 which is locted in Commissioners Precinct No. 4 of Hale County. Article 16, Section 9, of the State Constitution provides that absence on business of the State or of the United States shall not forfeit a residence once obtained so as to deprive anyone of the right of sufferage. Miss Pinkerton was an employee of the United States government and her duties required her to be physically present in Washington, D. C. during the time she was so employed. According to the above mentioned provision of the Constitution, she did not forfeit her right to vote in Precinct 12 of Hale County by accepting employment of the government in the capital city. In my opinion the testimony of her brother that she was single and had resided in Washington, D. C. since 1942, and that she had not resided in Hale County since October, 1942, did not have the effect of establishing a change of residence from the home of her parents in Hale County to Washington, D. C. His testimony concerned a question of law and not of fact. The question of the place of one's residence depends upon the facts. When it is established that one lives in a house located in a certain county or subdivision, eats his meals there and sleeps there, the law says his residence is there. The mere legal conclusion expressed by a voter or citizen as to the place of his residence or the residence of any other person is incompetent to establish the place of his residence as a matter of law. If a person testifies he resides in a certain county and the facts show he maintains a home in another county and his family lives there and he lives, works, sleeps and eats his meals there, his legal residence is established, as a matter of law, in the other county, although he states positively that his residence is in the first county.

Moreover, in my opinion, there are other facts established by the testimony which indicate that Miss Pinkerton considered her residence to be in voting Precinct No. 12, and, in cases of this kind, the purposes and intentions of the voter carry much weight. She held a poll tax receipt for the year 1947 and, whether the poll tax was paid by her in person or by someone else for her, it showed her intention and indicated strongly that she considered her residence to be in Hale County. She presented herself as a voter and voted in the precinct, indicating further, and very strongly, that she considered herself a resident of the county and precinct. The receipt contained a blank space for the insertion of the name of anyone else who should pay the poll tax for Miss Pinkerton, but no name was entered therein. It was a plain receipt which stated that the tax collector had "received of Miss Pinkerton" the amount of money paid as her poll tax and the testimony of her brother indicating it was paid by someone else had little if any significance. He did not really know whether she had paid her poll tax at all or not. In answering the question as to whether she had paid her poll tax, he said, "Well, I don't really know; somebody paid it for her though."

The mere fact that Miss Pinkerton had not paid a poll tax for several years preceding 1947 was of no significance. It is a mere assessment and the only consequence of failure to pay it is that the citizen is not entitled to vote. Certainly the failure to pay it does not forfeit his residence in the place where it is otherwise established.

It is my conclusion, therefore, that neither the testimony of Ward Pinkerton nor the failure of Miss Pinkerton to pay her poll tax for several years was competent evidence of a forfeiture of her residence in voting Precinct No. 12 of Hale County

and, since her absence on business of the United States government did not forfeit it, she was a qualified voter in the precinct as far as this record shows and the court below erred in holding otherwise.

STOKES, A. J.