CRAMER v. GRAHAM et al.

No. 12618.

Court of Civil Appeals of Texas.
San Antonio.

Jan. 6, 1954.

Rehearing Denied Feb. 3, 1954.

**136**

Kent, Brown & George, Harlingen, for appellant.

Robin M. Pate, Brownsville, for appellees.

POPE, Justice.

This is an election contest. On October 4, 1952, an election was held in Cameron County to decide whether Buena Vista Common School District Number Sixteen should be consolidated with Los Fresnos Independent School District. A majority of the voters were in favor of the consolidation. Upon the hearing of the contest, the trial court found certain voters were not

qualified, and decided that the final result was eighteen votes in favor of consolidation and twelve votes against consolidation The voting box was not opened since there were not enough irregular votes to affect the outcome of the election. Twenty-three points are urged on appeal challenging the qualifications of other voters. The parties made certain stipulations, including one that confusion existed in the minds of the resident voters, and the Cameron County Tax Assessor-Collector, as to which voting precinct the voters actually resided in, which fact the trial court, no doubt, correctly took into consideration in weighing portions of the evidence.

An attack is made upon the validity of eight votes, because the electors had not been residents within the Buena Vista School District for a period of six months, though they had been residents within the county for six months. The pertinent Constitutional provision is Article 6, § 2, Vernon's Ann.St., which requires voters to reside in the State one year next preceding an election and "the last six months within the district or county in which such person offers to vote."

The phrase "district or county" used in the Constitution has been interpreted by the Supreme Court of Texas, and, whether rightly or wrongly, it has been decided that the word "district" as used in the phrase, disjunctively with the word "county", is meaningless. Little v. State, 75 Tex. 616, 12 S.W. 965, 969. Parks v. West, 102 Tex. 11, 111 S.W. 726, 728, further explains the election plan expressed in the Constitution. That plan took the county as the territorial base, and just as the State is divided into districts for other purposes, the county is the territorial base or district for voting purposes. This idea is expressed in this language: "The state is divided into counties which are declared by the Constitution to be legal subdivisions. With a few exceptions, that division is made to form the base of other divisions, both larger and smaller, made for the purposes of local representation and local government. So comprehensive is this conception that vot-

ers are required to reside for a specified time before elections in the counties where they are to vote and to vote in the election precincts of their residences, from which it follows that such precincts are to be in such counties or districts." After the Parks case, there was a Constitutional amendment to permit county-line school districts. Gillespie v. Lightfoot, 103 Tex. 359, 127 S.W. 799. However, the addition of Section 3a to Article VII of the Constitution in no way disturbed the general plan for suffrage as expressed in Article VI of the Constitution.

■ While they do not expressly discuss the Constitutional provisions, other precedents support the view that an elector must be a resident of the State for one year, resident of the county for six months, and a resident of the subdivision of the county wherein he votes at the time he votes, but not necessarily for six months. Shaw v. Taylor, Tex.Civ.App., 146 S.W.2d 452; Warren v. Robinson, Tex.Civ.App., 32 S.W. 2d 871; Linger v. Balfour, Tex.Civ.App., 149 S.W. 795, 803. But see, Snelson v. Murray, Tex.Civ.App., 252 S.W.2d 720; Hill v. Mays, Tex.Civ.App., 278 S.W. 919, 923.

■ The residence requirements of nine voters are challenged because the electors occupied habitations consisting of trailer houses, walled-up tents, cabins and shacks alongside public waters and on public property. Photographs in the record show that these persons dwelt together in a typical fishing village along the shore. The record shows that these persons were permanent residents. Their household effects and equipment were permanently located there. They had resided there for periods ranging from three months to seven years. They operated bait stands, fished and worked at other occupations in the vicinity. They slept there. No one molested them or protested their occupancy, and we are of the opinion that McBeth v. Streib, Tex.Civ.App., 96 S.W.2d 992, settles the point that voters may be residents though living on public property. The points are overruled.

■ The next group of points challenges the residence qualifications of five single men who voted. Article 5.08 of the Election Code, V.A.T.S., which was adopted in 1951, provides that a single man's residence is fixed at the place "where he usually sleeps at night". We regard that section of the Code as declaratory of the then existing law interpreting the residence requirements under Article VI, § 2, of the Constitution. Spraggins v. Smith, Tex.Civ. App., 214 S.W.2d 815; Major v. Loy, Tex. Civ.App., 155 S.W.2d 617, 621; McBeth v. Streib, Tex.Civ.App., 96 S.W.2d 992; Hill v. Mays, Tex.Civ.App., 278 S.W. 919; Huff v. Duffield, Tex.Civ.App., 251 S.W. 298; Linger v. Balfour, Tex.Civ.App., 149 S.W. 795; Savage v. Umphries, Tex.Civ.App., 118 S.W. 893.

The five challenged voters are, Abram Cruz, Juan G. Yzaguirre, Domingo Gonzales, Gulgencio Jaramillo and Pablo Vasquez. Two days before the election, as found by the trial court, each of those voters was employed as a farm laborer on the Bryant farm within the Buena Vista School District. All of those voters left the farm and the district on October 11th. Apart from that brief period, nothing indicates that they had ever worked or been within the district before October 2d, nor that they ever returned or had any intention of returning after October 11th. They each slept within the district nine nights. Cruz testified that he had always lived at a place called Laureles. Laureles is outside the school district. In November he voted in the general election in Los Fresnos, where he stated he also had voted in various school elections. Los Fresnos is outside the Buena Vista School District. In January he voted in a water district election in Los Fresnos.

Yzaguirre stated that he lived west of Los Fresnos, outside the school district. Gonzales, in answer to the direct question as to where he lived, stated he lived in Los Fresnos, and that he had lived there all his life. He had been granted a draft deferment by reason of his farm employment on a farm outside of the Buena Vista School District. The Draft Board was not

informed of any change of his employment status. Gonzales voted in November in the Los Fresnos District. Jaramillo, prior to October 2d, lived with his father in Los Fresnos, and at the trial he stated he then lived at Los Fresnos, and had lived there about twenty years. Vasquez testified that he had lived at Laureles since 1930, and at the time of the trial stated he was living there.

 We sustain the points and hold that the five voters were not residents of the Buena Vista School District, since they did not "usually" sleep at night within the district. Their employment was temporary, and they permanently lived and voted for many years outside of the Buena Vista District. After leaving the district they returned to their places of origin and again voted at those places. "Usually" means customary or habitual, and, as applied to a place of abode, has been defined as "customary or settled place of residence; a regular, fixed and permanent residence, as distinguished from a temporary stopping or abiding place." Ballentine's Law Dictionary, p. 1323. The voters' appearance in and departure from the district was sudden. There is nothing which shows they had ever been there before or ever intended to return again. Evidence shows their long-continued residence in homes outside the Buena Vista District, and their return to those same abodes. The five voters were not residents of the school district. Spraggins v. Smith, Tex.Civ.App., 214 S.W.2d 815, 818; Hill v. Mays, Tex.Civ.App., 278 S.W. 919, 920; McCharen v. Mead, Tex.Civ. App., 275 S.W. 117, 121; Huff v. Duffield, Tex.Civ.App., 251 S.W. 298, 299, 300; Marsden v. Troy, Tex.Civ.App., 189 S.W. 960, 965.

 The votes of two other single men are challenged on the ground that they resided a part of the time inside the Buena Vista School District, but never abandoned their former residences in Port Isabel, which is outside the district. We can not agree with the contention, because the evidence supports the trial court's findings to the contrary. Otto Schier admitted that he owned a "kind of a place" in Port Isabel, but testified that he only stayed there "sometimes once a month; sometimes one day a month." Yet he stated he had lived seven years within the Buena Vista School District. He voted in November in Port Isabel. The facts with reference to Robert Call are similar. He had lived on a barge within the Buena Vista District for a period of six years, and owned a summer cabin at Port Isabel, outside the district. He stated that he did not visit the summer cabin very often, and that another person lived in it. He also voted in the November election at Port Isabel and at other times. While voting outside the district is a relevant and important fact to be considered, we do not regard it as controlling over the other evidence, and especially the long-continued living within the district by both Schier and Call. They were residents of the Buena Vista District.

 The last two votes in question relate to the residence of a married couple, Mr. and Mrs. Sam D. Baker. The finding, supported by direct testimony, was that they had resided within the Buena Vista District since July 10th, three months before the election. They owned a house outside the district, but it was rented to their son and his family. They occasionally visited with the son's family for periods of two or three days. They claimed a homestead exemption on the house. The residence of a married man is where his wife resides and they positively testified that they moved into the District in July, saying: "That's our home and has been since then." The trial court's finding that they were residents is supported by the evidence.

Since only five votes were improperly considered, the result of the election would be unchanged, even if all of them were in favor of consolidation.

The order of the trial court is affirmed.